Jolene L. **HARRIS**, Plaintiff,

v.

Kenneth **APFEL**, Commissioner of the Social Security Administration, Defendant.

No. 99–4179–RDR.

United States District Court, D. Kansas.

Feb. 21, 2001.

Steven M. Tilton, Tilton & Tilton LLP, Topeka, KS, Kenneth F. Laritz, Clinton Township, MI, for plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action to review a final decision by the Commissioner of Social Security regarding plaintiff's entitlement to disability insurance benefits under the Social Security Act. The parties have briefed the relevant issues and the court is now prepared to rule.

### I.

Plaintiff filed an application for disability benefits on March 7, 1996. She alleged that her disability began on January 14, 1988. She indicated that she was disabled due to obesity, back pain, arthritis, tendonitis and severe hormonal imbalance. Plaintiff's application was denied initially and on reconsideration. It was determined that she was not disabled through December 31, 1995, the last date of insured status. A hearing was ultimately conducted by an administrative law judge (ALJ) on plaintiff's application. At the hearing, plaintiff amended her disability onset date to November 31, 1992. On May 29, 1998, the ALJ determined in a written opinion that plaintiff was not entitled to disability benefits. On September 28, 1999, the Appeals Council of the SSA denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

### II.

This court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir.1996) (quoting *Richard-son v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, the court cannot weigh the evidence or substitute our discretion for that of the Commissioner, but we have the duty to carefully consider the entire record and make our determination on the record as a whole. *Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir.1987).

The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant through step four; then it shifts to the Commissioner. *Id.*

### III.

Plaintiff was born on October 24, 1940. Plaintiff is a high school graduate. She has received training as a licensed practical nurse. She has previously worked as a nurse and an automobile assembler. She was last employed prior to November 31, 1992.

The focus of the ALJ's decision was on the period from November 31, 1992 to December 31, 1995, the last date of plaintiff's insured status. The medical evidence in the record is very limited, particularly prior to the conclusion of plaintiff's insured status.

The only medical evidence during that period concerns an admission by plaintiff on April 7, 1993 to St. Francis Hospital in Topeka, Kansas for drug treatment. Eric A. Voth, M.D. gave her a physical examination at that time. She indicated to him that she was disabled from Ford Motor Company due to back pain. She stated

that she had received a medical retirement after thirteen years of employment. Dr. Voth found that plaintiff was a "healthy black female, somewhat obese." He noted nothing unusual in his physical examination. His impression was that she suffered from cocaine dependence and back pain with chronic disability. He assessed a Global Assessment Functioning (GAF) value of 60 to 70, which represents a mild degree of severity of symptoms or functional impairment. During her ten-day stay in the hospital, she was treated solely for her drug dependence. She was released on April 17, 1993 to outpatient care.

On June 29, 1996, plaintiff was examined by Daniel Thompson, M.D. Dr. Thompson noted plaintiff's chief complaint as "lumbar radiculitis." Plaintiff related a six-year history of pain in the low back. She further said that the pain radiated into her right leg, knee and foot, and was aggravated by coughing and sneezing. She indicated that she could sit for sixty minutes, stand for two to three minutes, and walk one-half block. She noted that she could occasionally lift five pounds. Dr. Thompson noted that plaintiff weighed 250 pounds and was 62.5 inches tall. She indicated that her maximum lifetime weight was 250 pounds and that one year ago she weighed 235 pounds. Her blood pressure was 126/84 in her right arm and 128/76 in her left arm. Dr. Thompson found a normal range of motion for all joints. He noted that straight leg raising was 90 degrees bilaterally and there was no paraspinous muscle spasm. He found that plaintiff had severe difficulty with heel and toe walking. He also noted mild difficulty in getting on and off the examining table, squatting and arising from a sitting position, and hopping. He diagnosed low back pain and intermittent elevated blood pressure. An x-ray showed minimal narrowing of the L1–2 disc spaces, associated with slight anterior spurring and eburnation along opposing end plates.

On March 28, 1997, Fernando M. Egea, M.D. indicated that plaintiff weighed 245 pounds and was five feet two inches tall.

On October 7, 1997, plaintiff was seen by Mark Thomas, M.D. At that time, she complained of high blood pressure. She was referred to Dr. Thomas after Dr. Egea, an orthopedist she was seeing, found that her blood pressure was grossly elevated. Dr. Egea had recorded her blood pressure at 250/146. Plaintiff reported right leg pain, intermittent ear pain and occasional tingling in her hands and feet. Dr. Thomas found that plaintiff's weight was 247 pounds and her height was five feet three and one-half inches. He made the following assessments: most likely essential hypertension, gross obesity, chronic knee pain, substance abuse—reformed cocaine user, status post hysterectomy. He began treating her for hypertension.

Dr. Thomas saw plaintiff again on October 21, 1997 and December 4, 1997. During those visits, she weighed 248.5 pounds. Dr. Thomas found that her hypertension was responding to treatment.

At the hearing before the ALJ, plaintiff testified she had been disabled since November 31, 1992. She stated that she weighed 247 pounds and was five feet three inches tall. She said her doctor was Dr. Thomas. She also indicated that she was seeing Dr. Egea. He was treating her for knee pain and depression. She indicated that she had a hysterectomy in 1987. She is now taking a hormone replacement, a diuretic for high blood pressure and some pain medication. She noted that these medications give her a dry mouth and make her light-headed. She indicated that she is unable to work because her hands hurt and her knees hurt. She indicated that she suffered these same problems prior to 1995 plus low back pain. She previously worked as a licensed practical nurse in 1992. She stated that she

stopped working because the amount of money she was making might prevent her from receiving her disability payments. She was receiving disability payments as a result of her prior employment with Ford Motor Company. She had worked at Ford Motor Company from 1977 to 1988 as an automobile assembler.

Plaintiff described her daily activities. She stated that she usually got out of bed at 9:30 a.m. She took her granddaughter to school at least twice a week. She stated that she was able to take care of personal needs. She also does some household chores, including vacuuming, dusting, washing dishes, washing clothes and cooking. She does not mow the grass. She is able to do some grocery shopping. She is able to walk two blocks before she tires. She states she does socialize with friends and she occasionally goes out to eat or see a movie. She reads, watches television and attends church regularly. She goes to bed between 11:00 p.m. and midnight. She has slept well since she started taking her pain medication.

Prior to the expiration of her insured status, plaintiff stated that she did not sleep well. She said she did not get much sleep at night due to depression. She said that she slept during the day. She stated that she just did not feel good during this period. She testified that she was a cocaine user during this time. She stated that she has not used cocaine since 1993.

Plaintiff indicated that in 1993 she could only lift about ten pounds. She said that she could sit for about two hours and stand for about fifteen minutes. She could walk about three blocks. She stated that she could do about the same activities in 1993 except that she may have been able to walk five blocks. She believes that she weighed about 260 pounds in 1993 when she was hospitalized at St. Francis Hospital, but she is not sure that she was weighted at that time.

Amy Silva, a vocational specialist, also testified at the hearing. She testified that plaintiff's past relevant work as an automobile assembler was unskilled, medium work, while her work as a licensed practical nurse was skilled, heavy work. She noted that plaintiff does have transferable skills in the medical field. She suggested that plaintiff's skills would transfer to the positions of first aid nurse, phlebotomist, medical clerk, and doctor's receptionist. The ALJ posed a hypothetical question based on an individual of plaintiff's age, education and work experience with the aforementioned transferable skills. In response, Ms. Silva testified that such an individual could perform light work such as a first aid nurse or a phlebotomist. She further indicated that such an individual could perform sedentary work such as a medical clerk or doctor's receptionist. She noted that these jobs exist in significant numbers in the state of Kansas and in the national economy.

The ALJ concluded that plaintiff did not suffer from a listed impairment, but that she suffered from severe impairments during the period from November 31, 1992 to December 31, 1995. He found that plaintiff's testimony was not credible. He determined that plaintiff retained the residual functional capacity to perform light work where lifting was limited to twenty pounds occasionally and ten pounds frequently; sitting, standing and/or walking was limited to no more than six hours of an eight-hour day; and pushing and/or pulling was limited to no more than the aforementioned weight limits. Given plaintiff's exertional capabilities and limitations, along with her age, education and past relevant work, the ALJ concluded that plaintiff could perform work which exists in significant numbers in the local and national economies. Accordingly, the ALJ determined that plaintiff was not disabled

during the period from November 31, 1992 to December 31, 1995.

## IV.

Plaintiff raises two arguments in this case. First, she contends that the ALJ erred in not finding that she met a Listed impairment. Specifically, she argues that the ALJ should have found that she was disabled at step three of the sequential analysis because she met the requirements of the obesity Listing § 9.09A. Second, she asserts that the ALJ's finding that she could perform a limited range of light work was not supported by substantial evidence.

The obesity listing, § 9.09A[1], requires that a claimant meet certain weight and height standards and also one of five additional requirements. A person who is 62 inches tall[2], as was the plaintiff, must weigh 242 pounds to satisfy the initial standard. The arguments of the parties are directed solely at the initial standard, specifically plaintiff's weight during the period from November 31, 1992 to December 31, 1995.

The only medical records during the period from November 31, 1992 to December 31, 1995 do not provide a specific weight for plaintiff. During her hospitalization at St. Francis in April 1993, Dr. Voth indicated that plaintiff was "somewhat obese." At the hearing before the ALJ, plaintiff testified that she weighed 247 pounds at that time and that she might have weighed 260 pounds in 1993. Reports from physicians in 1996 and 1997 showed plaintiff's weight as varying from 245 to 248.5 pounds. During a visit with Dr. Thompson in 1996, plaintiff told him that the most she had ever weighed was 250 pounds, and that she probably weighed about 235 pounds in 1995.

In order to prevail at step three of the sequential analysis, a claimant must provide medical evidence that supports a finding that she meets a Listed impairment. Here, there is a complete lack of any medical evidence during the period from November 31, 1992 to December 31, 1995 concerning plaintiff's weight. See *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir.1997) (plaintiff's testimony as to height and weight are insufficient for purposes of establishing obesity under § 9.09A). Although the medical records from April 1993 refer to plaintiff as obese, there is no evidence as to her height and weight at that time. Accordingly, the court finds that the ALJ's determination that she did not meet a Listed impairment is supported by the record.

The court has undertaken a thorough review of the medical evidence and determined that there is substantial evidence in the record to support the ALJ's

---

**1.** The Commissioner has argued that the court may not grant benefits to plaintiff under Listing § 9.09 no matter how we resolve her issues in this case. The Commissioner points out that this listing has been deleted and replaced with a more restrictive standard. This change became effective on October 25, 1999, after the ALJ's decision and while this case was pending in this court. The Commissioner argues that pending claims, such as plaintiff's, should be evaluated under the new regulations. In *Nash v. Apfel*, 215 F.3d 1337, 2000 WL 710491 (10th Cir.2000), an unpublished decision, the Tenth Circuit rejected the Commissioner's argument. Although this opinion is not binding precedent, the court finds the analysis persuasive and applicable here. See *Rudolph v. Apfel*, 2000 WL 1916317 at * 7 (D.Kan.2000). Accordingly, the court shall evaluate plaintiff's claim under Listing § 9.09 as it existed at the time of the administrative hearing.

**2.** The medical record shows plaintiff's height as varying from 62 inches to 63.5 inches. The ALJ did not make a finding on this matter. For the purposes of this action, the court shall apply the height most favorable to the plaintiff.

determination that plaintiff retained the residual functional capacity to perform limited light work during the period from November 31, 1992 to December 31, 1995. The medical evidence from this period certainly provides no support for a conclusion that plaintiff was disabled. As pointed out by the ALJ, plaintiff's failure to seek treatment between May 1993 and January 1, 1996 is inconsistent with her claim of disability. The medical evidence after that period provides support that plaintiff may have been disabled after that period, but even that conclusion is in doubt.

The court also finds that the ALJ properly evaluated the credibility of plaintiff. In evaluating the credibility of a claimant, an ALJ must consider and weigh a number of factors in combination. See *Huston v. Bowen*, 838 F.2d 1125, 1132 @ n. 7 (10th Cir.1988). The court recognizes that the ALJ is " 'optimally positioned to observe and assess witness credibility.' " *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Secretary of Health and Human Services*, 933 F.2d 799, 801 (10th Cir.1991)). Therefore, the court may overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it. See *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992). The court finds that the ALJ's credibility determination of plaintiff's testimony was properly linked to substantial evidence in the record.

In sum, the court finds that the decision of the ALJ is supported by substantial evidence. Accordingly, the decision of the ALJ must be affirmed.

**IT IS SO ORDERED.**