**Tammy L. KOKAL, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

**No. C–00–2966–EDL.**

United States District Court, N.D. California.

Sept. 18, 2001.

## ORDER ON MOTION FOR SUMMARY JUDGMENT OR REMAND

LAPORTE, United States Magistrate Judge.

## I. INTRODUCTION

On January 27, 1999, Plaintiff Tammy L. Kokal, appearing pro se, filed a claim for social security disability benefits under Title II of the Social Security Act, alleging that she has been disabled by an ankle injury and resulting complications as of June 8, 1997. Plaintiff appeals from the denial of her claim by the Social Security Administration ("SSA") on April 6, 1998, and again upon reconsideration on July 29, 1998.

The principal issue on appeal is whether Administrative Law Judge Michael P. Bazell ("ALJ") erred by failing to consider whether Plaintiff was disabled due to the combination of her obesity and other impairments, either under the obesity listing in place at the time of her administrative hearing, Listing 9.09,[1] or under the regulations on obesity that replaced that listing while her case was pending before the Appeals Council. Plaintiff also argues that substantial evidence does not support the

---

1. 9.09 Obesity. Weight equal to or greater than the values specified in Table I for males, Table II for females (100 percent above desired level), and one of the following:

A.) History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine; or

B) Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or

C) History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; or

D) Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight-bearing and persistent edema; or

E) Respiratory disease with total forced vital capacity equal to or less than the value specified in Table III–A or III–B or III–C.

20 C.F.R. pt.404, subpt. P, app.1.

ALJ's finding regarding her subjective statements of pain.

The Commissioner of Social Security ("Defendant") responds that Plaintiff failed to establish an inability to perform her past relevant work, and submitted immaterial extra-record evidence. Only when this Court requested further briefing did Defendant address the issue of Plaintiff's obesity.

## II. BACKGROUND

On June 7, 1999, Plaintiff appeared without counsel at a hearing before the ALJ. The administrative record before the ALJ reveals the following medical and work history. Plaintiff was born on June 2, 1960 and holds a GED, which is equivalent to a high school education. During 1986–87, Plaintiff worked as a spot welder. (Rec.42).[2] During 1987–88, Plaintiff worked as a cashier and a payroll clerk. (Rec.41). After earning her GED in 1994, Plaintiff worked as a pharmacy technician until her accident in June, 1997. (Recs.24–25). After filing for disability benefits, Plaintiff worked from February 8, 1999 to March 11, 1999 as a legal service courier, but quit because her supervisor would not permit her to wear tennis shoes. (Recs.30–32).

Plaintiff first visited Kaiser Permanente Medical Center ("Kaiser") on June 8, 1997, following her injury. (Rec.133). Plaintiff was diagnosed with a sprained right ankle. *Id.* A computed tomographic ("CT") scan of her ankle did not reveal any significant abnormality. (Rec.145).

Plaintiff again visited Kaiser in July and August 1997. Dr. David Cummins diagnosed Plaintiff as having a "delayed recovery" from the sprain due to a "soft tissue injury." (Rec.124, 125). A second CT scan of her ankle again did not reveal any significant abnormality. (Rec.144).

Later, on December 10, 1997, Dr. Peters, also from Kaiser, examined Plaintiff and noted that she was morbidly obese, but moved about quite well. (Rec.115). In fact, Plaintiff's medical records reveal that nearly every physician who treated her noted on record that she was obese (Rec.126, 162) or morbidly obese. (Recs.102, 115, 122, 131, 139, 149).

Soon after, Dr. Cummins diagnosed Plaintiff with "chronic posttraumatic ankle dysfunction" and recommended that Plaintiff find a job in which she could work part-time and not be on her feet during the work day. (Recs.111, 160). In January, 1998, Kaiser neurologist Dr. J. Philip Seab noted that Plaintiff complained of low back pain radiating into her legs. (Rec. 108). He prescribed Trazadene to lessen her pain and sleep problems and recommended pool exercises and weight loss. (Recs.104, 109). Plaintiff also was given an MRI scan of her spine, which revealed early lumbosacral degenerative disc disease. (Rec.106).

Plaintiff then visited the Kaiser Spine Clinic, where Dr. Leo Chi diagnosed Plaintiff with chronic mechanical low back pain with symptoms of radiculitis. (Rec.101). Dr. Chi prescribed weight loss with diet, medications, ice and Trazadene on a regular basis. (Rec.102). Shortly after, Dr. Chi opined that Plaintiff could begin retraining for another job; that she could lift ten pounds occasionally; that she could occasionally bend, squat, kneel or climb; and that she could stand, walk, sit or drive for two hours at a time for a total of eight hours each day. (Rec.99).

---

**2.** Civil Local Rule 16–5 requires that Defendant file a "certified copy of the transcript of the administrative record" when filing an answer. The record ("Rec.") includes a copy of the ALJ's decision and copies of Plaintiff's submissions to the SSA. Citations to specific pages of the record are to the bates stamp number located in the upper right hand of each page of the record.

At the request of the Department of Rehabilitation, Psychologist Alex Leung, Ph.D., evaluated Plaintiff on May 21, 1998, seeking to discover suitable employment for Plaintiff by assessing her "level of cognitive ability, her academic aptitude and her vocational interest profile." (Rec.179–84). Based on Plaintiff's test scores and Vocational Interest Profile, Dr. Leung concluded that Plaintiff could be expected to perform at a level which is somewhat lower than performance of her peers of the same age and could perform several jobs, including an orderly, nurse's aide, morgue attendant, physical therapy aide, service station attendant and parking lot attendant. (Recs.182, 184).

In June, 1998, orthopedic surgeon Charles Miller, M.D., examined Plaintiff, noting that she primarily complained of pain in her lower back, right ankle and foot, left knee, and neck and upper back (Rec.162–67). Dr. Miller diagnosed Plaintiff with pain but full range of motion in her left knee, limited range of motion in her ankle joints, chronic right ankle and foot sprains, left hip strain, cervical strain and lumbar strain. Dr. Miller concluded that although Plaintiff's walking ability was restricted, she could lift and carry up to fifteen pounds, occasionally push and pull twenty-five pounds and stand and walk noncontinuously for six hours each day, provided she was given frequent rest breaks. (Rec.165). The following month, state agency physician Harmon Michelson, M.D., opined that, based on Plaintiff's medical examinations and diagnoses, she retained the ability to work six hours a day, with only occasional climbing, stooping, kneeling, crouching and crawling. (Rec.168–75).

On April 13, 1999, during Plaintiff's administrative hearing, vocational expert witness ("VE") Richard Hincks testified that, if an individual with Plaintiff's vocational profile were limited to sedentary work, that individual could perform Plaintiff's past relevant work as a payroll clerk. (Rec.44). The VE also identified other work that Plaintiff could perform, which existed in significant numbers in the national economy. (Rec.45–46).

Plaintiff testified during the hearing that due to the side effects, she does not take medication for the pain. (Rec.33). She stated that she seldom cooks and primarily sits or lies down all day except for picking her children up from school and traveling to and from church twice weekly. (Rec.34).

Plaintiff also testified that Dr. Peters recommended that she undergo a stomach stapling procedure, which would lessen the amount of food she can eat in a single sitting, so she could lose weight in order to decrease the amount of pressure on her back and ankles. In Plaintiff's motion for summary judgment she explained that due to her numerous health problems and the risks of surgery she decided against having the surgery. *See* Pl.'s Mot. for Summ. J.

On June 7, 1999, the ALJ issued a decision finding that Plaintiff was not disabled. On June 15, 2000, the Appeals Council declined Plaintiff's request for review. The ALJ's decision therefore became the final decision of the Commissioner of Social Security. Plaintiff commenced the present action on August 17, 2000, pursuant to 42 U.S.C. section 405(g). On April 5, 2001, this Court issued an Order to Show Cause, requiring Plaintiff to either file a motion for summary judgment or appear at a hearing to explain why no such motion had been filed pursuant to Civil Local Rule 16–5. Plaintiff filed a Motion for Summary Judgment on April 17, 2001,[3]

---

**3.** Plaintiff's Motion for Summary [Judgment] is simply a summary of her case. Because

and Defendant filed a Cross–Motion for Summary Judgment on May 15, 2001. Plaintiff did not file a reply. On July 27, 2001, this Court requested specified further briefing. Defendant submitted its supplemental briefing on August 8, 2001. Plaintiff did not file a supplemental brief. The matter is now deemed submitted. *See* Civil L.R. 16–5.

## III. STANDARD OF REVIEW

 "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *See* 42 U.S.C. 405(g). The Commissioner's findings may be set aside only if they are based on legal error or are not supported by substantial evidence. *See Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998) (citing *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir.1996)). "Substantial evidence is more than a scintilla, but less than a preponderance. [It is] relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Jamerson v. Chater,* 112 F.3d 1064, 1066 (9th Cir.1997)). To determine whether substantial evidence supports the Commissioner's findings, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (quoting *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989)). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary. *See id.* (citing *Flaten v. Secretary of Health & Human Servs.,* 44 F.3d 1453, 1457 (9th Cir.1995)).

## IV. DISCUSSION

### A. *Definition and Determination of Disability*

To qualify for disability insurance benefits, Plaintiff must demonstrate that she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment, which can be expected to result in death or last for a continuous period of at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

The SSA uses a five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. 404.1520; *see also Bowen v. Yuckert,* 482 U.S. 137, 140–41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Reddick,* 157 F.3d at 721. First, the SSA determines whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. 404.1520(b). If the claimant is not engaged in substantial gainful activity, the SSA proceeds to step two to determine whether the claimant has a medically severe impairment or combination of impairments. *See* 20 C.F.R. 404.1520(c). If the claimant is found to have a severe impairment, the SSA proceeds to step three to "determine whether the impairment is equivalent to one of a number of listed impairments ('listings') that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Bowen,* 482 U.S. at 141, 107 S.Ct. 2287; *see also* 20 C.F.R. 404.1520(d). The SSA presumes that a claimant is disabled if his impairment meets or equals one of the listings. *Id.*

If the claimant's impairment does not meet or equal one of the listings, the SSA proceeds to step four to determine the claimant's residual functional capacity, which is then used to decide whether the

Plaintiff is pro se, and because there is no objection from Defendant, Plaintiff's motion shall be construed liberally as a summary judgment motion.

claimant's impairment "prevents [him] from performing work [he] has performed in the past." *See* 20 C.F.R. 404.1520(e). The SSA considers the claimant not disabled if he is able to perform his past work. *Id.* If the claimant cannot perform his past work, the SSA proceeds to step five to determine whether the claimant can perform other work in the national economy, considering his age, education and work experience. *See* 20 C.F.R. 404.1520(f). If the claimant cannot perform other work, the SSA finds him disabled. *See* 20 C.F.R. 404.1520(f)(1).

Here, the ALJ resolved Plaintiff's claim at the fourth step of the sequential evaluation process. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 8, 1997. (Recs.11, 17). At step two, the ALJ determined that Plaintiff's impairments were severe because they imposed more than a slight limitation on her ability to perform basic activities. (Recs.11, 17). At step three, however, the ALJ held that neither Plaintiff's right foot and ankle sprain nor her lumbar strain rose to the level of "marked" limitation of motion required by the applicable section of the Listing of Impairments found at 20 C.F.R., pt. 404, supt. P, app. 1. (Rec.18). At step four, the ALJ found that Plaintiff retained the residual functional capacity for lifting and carrying fifteen pounds, pushing and pulling twenty-five pounds occasionally, and standing and walking six hours a day, provided that she could change position every

hour and did not climb. (Rec.18). After interviewing the vocational expert who performed Plaintiff's psychological evaluation, the ALJ concluded that, in light of Plaintiff's residual functional capacity, she did not suffer from an impairment or combination of impairments that impeded her from performing her past relevant work as a payroll clerk. (Rec.16, 18).

Although the ALJ concluded at step four that Plaintiff was not disabled, the ALJ proceeded to step five, finding that she also could not overcome this step of the sequential analysis because she could perform a number of other jobs available in significant numbers in the national economy. (Rec.17). The ALJ further deemed Plaintiff's subjective complaints of pain not credible to the extent that she claimed that she had been precluded from engaging in all substantial gainful activity for a period of time that had lasted or can reasonably be expected to last for twelve continuous months. (Rec.18). The ALJ therefore concluded that Plaintiff was not disabled at any time on or before the date of the decision. *Id.*

**B. The ALJ's Failure to Consider Plaintiff's Obesity**

 Plaintiff argues that the ALJ erred by failing to consider her obesity as an additional factor under Listing 9.09, which was in effect at the time of the hearing before the ALJ.[4] If a claimant meets or equals a listed impairment, she is conclusively presumed to be disabled. *See*

4. Although not raised by Defendant, the Court considered whether Plaintiff is precluded from raising Listing 9.09 in this forum because she did not explicitly raise this issue before the ALJ. The Court concludes that she is not. The Supreme Court in *Sims v. Apfel,* 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), held that a Social Security claimant's failure to present an issue to the Appeals Council does *not* waive judicial review of that issue. Although the Court specifically deferred ruling on whether a claimant must exhaust issues before the ALJ prior to seeking judicial review, the Ninth Circuit has

allowed plaintiffs in social security cases to raise legal issues for the first time in court, and indicated that greater leniency applies to plaintiffs unrepresented by counsel during the administrative process. *See Silveira v. Apfel,* 204 F.3d 1257, 1259–60 (9th Cir.2000) (holding that the plaintiff was not precluded from raising an issue in federal court for the first time since it was a pure question of law and did not require consideration of additional evidence); *Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir.1999) (holding that the plaintiff's failure to present additional statistical

20 C.F.R. §§ 404.1520(d); 416.920(d). As stated above, Listing 9.09 required that a claimant meet certain weight and height standards and one of five other criteria. Of particular relevance here is the first one of these five: a history of pain and limitation of motion in a weight-bearing joint or lumbosacral spine supported by findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine. 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff's medical records submitted to the ALJ showed that she stood five feet tall and weighed 261–264 pounds, had a history of pain and limitation of motion in her spine and a finding of degenerative disc disease in an MRI. (Recs.176, 106). Alternatively, Plaintiff argues that even if this Court finds that Listing 9.09 no longer applies, the SSA erred by failing to consider Plaintiff's obesity at each step of the sequential evaluation process, as required by the current regulations which replaced Listing 9.09 while her administrative appeal was pending at the Appeals Council.

Effective October 25, 1999, the SSA deleted Listing 9.09 from the Listing of Impairments and substituted Revised Medical Criteria in listing sections 1.00(F) (musculoskeletal system), 3.00(I)(respiratory system) and 4.00(F) (cardiovascular system), that require evaluation of obesity's effect on the claimant in combination with these impairments. *See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria*, 64 Fed.Reg. 46, 122, 124 (1999). The SSA clarified its intent with respect to the ALJ's consideration of obesity:

> Our purpose in making these changes is to ensure that adjudicators understand that we consider obesity to be a medically determinable impairment that can be the basis for a finding of disability, and that *obesity in combination with other impairments must be considered* when evaluating disability at the listings step and other steps of the sequential evaluation process. We are making this change to clarify our intent.

64 Fed.Reg. at 123 (emphasis added).

Therefore, under both the former and current regulations, the SSA had to consider obesity as a factor when determining whether Plaintiff was disabled. Because it failed to do so, the Court must remand Plaintiff's case. The question remains whether this Court should remand the case to the ALJ to apply the former regulation or the current one.

**1. The Application of Listing 9.09 to Claims Pending on Appeal When It Was Repealed**

Only a handful of courts, all at the trial level, except for one unpublished appellate opinion,[5] have addressed the issue of which

---

evidence to the ALJ precluded her from raising this issue in federal court, especially since the plaintiff had been represented by counsel). Moreover, in Social Security cases, ALJs have a special duty to fully and fairly develop the record and to assure that a claimants' interests are considered. *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). Here, Plaintiff's argument that she is disabled under Listing 9.09, or its successor regulation, raises a legal issue that does not require presentation of new evidence but may be decided based on the evidence of obesity and other medical conditions presented to the ALJ and the Appeals Council, where she was unrepre-sented. (Recs. 28–29, 36–37, 102, 115, 122, 126, 131, 139, 149 162).

**5.** The only appellate opinion of which the Court is aware is an unpublished Tenth Circuit opinion, *Nash v. Apfel*, 2000 WL 710491, at *2 (10th Cir. June 1, 2000) (unpublished opinion), which this Court notes for completeness, though it is not precedential. *See* 10th Cir. R. 36.3 (an unpublished opinion may not be cited for precedent, but may be cited for its persuasive value with respect to a material issue that has not been addressed in a published opinion where it would assist the court.).

regulation to apply to claims pending on appeal when Listing 9 .09 was deleted and replaced.[6] These cases have reached conflicting results. Only two of them have addressed the issue of retroactivity, and these two did not address the distinction between a retroactive statute and a retroactive regulation.[7]

In *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court addressed the issue of retroactivity with respect to statutes. There, the Court considered whether section 102 of the Civil Rights Act applied to cases that were pending on appeal when it became law, and held that it did not. *Id.* at 249–50, 114 S.Ct. 1483. The Court adopted a presumption against retroactivity because prospectivity "accords with widely held intuitions about how statutes ordinarily operate" and "will generally coincide with legislative and public expectations." *Id.* at 272, 114 S.Ct. 1483; *see also Jeffries v. Wood*, 114 F.3d 1484, 1494 (9th Cir.1997). The Court noted, however, that exceptions exist to the general rule favoring prospectivity.

The Court set forth the following framework to analyze retroactivity: (1) whether the statute on its face provides for prospective or retroactive application; (2) in the absence of such an express provision governing the statute's reach, whether the statute would have retroactive effect; and (3) if the statute would have retroactive effect, whether Congress clearly intended such a retroactive effect, overcoming the presumption of prospectivity. *Id.* at 280, 114 S.Ct. 1483. While *Landgraf* addressed the retroactive application of statutes, courts have applied its reasoning to the issue of retroactivity of regulations. *See, e.g., Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 838 (9th Cir.1997); *Little Co. Mary Hosp. & Health Care Ctrs. v. Shalala*, 994 F.Supp. 950, 960 (N.D.Ill. 1998) (stating that *Landgraf* "supplies the test to decide when a statute (or by natural extension a regulation) operates retroactively").

Here, the regulation is silent on its face as to whether the changes to 20 C.F.R. pt. 404, subpt. P, app. 1, deleting Listing 9.09 apply retroactively or prospectively. In the absence of clear language regarding the reach of the new regulation, the analysis must proceed to step two.

The second step asks whether, if applied retrospectively, the regulation would have a retroactive effect on a substantive right of the plaintiff. In other words, "would [the regulation] impair the rights the party had when he acted, increase a party's liability for past conduct or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280,

---

**6.** *Compare, Parent v. Halter*, 153 F.Supp.2d 1090 (W.D.Mo. 2001) (new regulations apply to pending claims); *Havens v. Massanari*, 2001 WL 721661, at *2 (D.Kan. May 9, 2001) (same); *Rodriguez v. Massanari*, 2001 WL 406226 (N.D.Tex. April 17, 2001) (same); *Allen v. Apfel*, 2001 WL 253120, at *14 (E.D.La. March 14, 2001) (same); *Castrejon v. Apfel*, 131 F.Supp.2d 1053, 1056–57 (E.D.Wis.2001) (same); *Fulbright v. Apfel*, 114 F.Supp.2d 465, 475–76 (W.D.N.C.2000) (same); *Wooten v. Apfel*, 108 F.Supp.2d 921, 924 (E.D.Tenn. 2000) (same); *with, Nash v. Apfel*, 2000 WL 710491, at *2 (10th Cir. Okla. June 1, 2000) (unpublished disposition) (old regulation applies); *Harris v. Apfel*, 2001 WL 309048, at *4

(D.Kan. Feb.21, 2001) (same); *Rudolph v. Apfel*, 2000 WL 1916317, at *6–7 (D.Kan. Dec.29, 2000) (same); *Hendricks v. Apfel*, 2000 WL 174884, *6 (E.D.La. Feb.14, 2000) (same). The following courts addressed the split in authority, but for one reason or another, did not rule on whether the old regulation or the revised regulation applied to pending claims: *Stone v. Massanari*, 2001 WL 987852 (S.D.Ind.2001); *Portlock v. Apfel*, 150 F.Supp.2d 659 (D.Del.2001); *Busby v.. Apfel*, 2000 WL 1130099 (N.D.Cal.2000).

**7.** *See Fulbright v. Apfel*, 114 F.Supp.2d 465 (W.D.N.C.2000); *Rudolph v. Apfel*, 2000 WL 1916317, at *6–7 (D.Kan. Dec.29, 2000).

114 S.Ct. 1483. Courts must ask whether the new provision attaches new legal consequences to events completed before its enactment. *Id.* at 270, 114 S.Ct. 1483. Mere changes in procedural rules do not raise concerns about retroactivity. *Landgraf,* 511 U.S. at 275 n. 29, 114 S.Ct. 1483. But the presumption against retroactivity is *not* restricted to cases involving "vested rights." *Id.*

■ Here, Plaintiff's rights would be substantively altered if the revision to 20 C.F.R. pt. 404, subpt. P, app. 1 was deemed applicable to pending claims, because the revised regulation would raise the bar on proof of disability based on obesity. Plaintiff satisfied the height and weight requirements set forth in Table II of former Listing 9.09 at the time of the ALJ decision, standing five feet tall and weighing considerably more than the specified 230 pounds. Furthermore, Plaintiff probably satisfies the additional criteria required under 9.09(A). Therefore, Plaintiff likely satisfied the requirements of Listing 9.09, automatically qualifying her for disability benefits. By contrast, under the new regulation, Plaintiff would be required to show the extent to which her obesity affects each step of the sequential evaluation process, and might not qualify for benefits.

In *Landgraf,* the Court noted that retroactivity is most troubling when applied to contractual or property rights where predictability and stability are of prime importance. *Landgraf,* 511 U.S. at 271, 114 S.Ct. 1483. The United States points out that while an applicant for Social Security benefits may have a type of property interest in potential benefits warranting due process protections, *see Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that interest does not necessarily give rise to substantive rights. Yet none of the cases cited by the United States are really on point or binding on this Court.

The Supreme Court cases cited by the United States address whether *Congress* can cut the benefit *levels* of various welfare programs consistent with due process, not whether an *agency* can change the rules of *entitlement while a case is pending on appeal.* See, e.g., *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (railway benefits, like social security benefits, are not contractual and may be altered or even eliminated at any time); *see also Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Atkins v. Parker,* 472 U.S. 115, 129, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). But the issue here is not whether constitutional due process blocks application of a statute. Moreover, Congress (as opposed to an agency to whom such power has not been delegated) may engage in retroactive legislation when it expresses its intent to do so clearly.

In another case cited by Defendant, *Torres v. Chater,* 125 F.3d 166, 170 (3d Cir. 1997), the Third Circuit construed a congressional amendment to the Social Security Act that eliminated benefits for disability caused by alcohol and drug addiction and expressly provided for retroactive application of the provisions. The issue was not whether Congress intended the statute to operate retroactively—it clearly did—but the selection of the appropriate retroactive date. The court observed that "if a recipient's right to future benefits may be terminated by a statute, it follows that an applicant who has never been declared eligible may as well be deprived of an inchoate right." *Id.* at 170. The court relied *"[m]ore fundamentally,"* however, on the fact that Congress had made its will with regard to retroactivity clear. *Id.* (emphasis added).

The only Ninth Circuit cases cited by the United States in its supplemental brief are *American Mining Congress v. United*

*States Envtl. Prot. Agency,* 965 F.2d 759 (9th Cir.1992) and *National Med. Enter., Inc. v. Sullivan,* 957 F.2d 664 (9th Cir. 1992). *See* Def.'s Supplemental Brief at 5 ("Def.'s Supp."). As both these cases were decided two years before *Landgraf,* they do not apply the analysis that it set forth. Furthermore, neither addressed the issue of applying a change in a regulation to adjudicated claims for benefits pending on appeal. *American . Mining* rejected a challenge to the EPA's regulation requiring owners of inactive mines to obtain discharge permits. The court found that the regulation was not retroactive, applying Justice Scalia's reasoning in his concurrence in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), to the effect that "a retroactive rule is one that alters the past legal consequences of past actions." *American Mining,* 965 F.2d at 769. Neither *American Mining* nor Justice Scalia's concurrence in *Bowen* suggested that this particular formulation of retroactivity was meant to be comprehensive, a "one size fits all" test that also applies to cases like this one involving adjudication of benefits claims pending on appeal.

In *National Med. Enter.,* the court found no retroactivity where a regulation issued in 1976 phased out Medicare reimbursement for goodwill when *"at some future date"* the cumulative return reached one hundred percent. *Id.* at 671 (emphasis in original). As the court noted, in 1976 when the new rule went into effect, the phase out was plainly prospective, affecting only the future legal consequences of past transactions, but not lowering the reimbursement levels until some time after its promulgation. *Id.* By contrast, here the United States seeks to apply a new,

more restrictive rule to Plaintiff's eligibility for benefits than the one in effect when she filed her claim and it was adjudicated at the administrative hearing. That application would seem to run afoul at least of the consideration of fair notice set forth in *Landgraf.*

Further, *Landgraf* recognized the "potential unfairness of retroactive application." *Landgraf,* 511 U.S. at 272, 114 S.Ct. 1483. Here, the unfairness to Plaintiff is that she made her claim at a time when Listing 9.09 was in effect and, without the aid of an attorney, presented extensive evidence to the ALJ of obesity combined with other impairments that may well have qualified her as disabled under that Listing. Through no fault of her own but through the ALJ's error in not considering whether she met Listing 9.09, she was found not disabled. Subsequently, while pursuing her administrative appeal to the Appeals Council, the Listing was repealed and replaced with new, less favorable regulations regarding obesity. The Appeals Council then erroneously failed to consider either the new or the old regulations in rejecting her appeal.

Other similarly situated obese individuals who had their hearings while Listing 9.09 was still in effect and whose ALJs applied the regulations properly were granted disability benefits. Their benefits are not being reevaluated under the new standard. Yet Plaintiff, because of her ALJ's error, would be subject to the new, less favorable standard than those who were similarly situated if Plaintiff cannot now avail herself of Listing 9.09.[8] Of course, if Plaintiff is evaluated under the new criteria and found disabled, she will ultimately be treated the same as these

**8.** It is true that individuals who are similarly situated with respect to their obesity but who did not file claims until after Listing 9.09 was repealed also do not get the benefit of that

Listing—the new criteria plainly apply to them. But that, of course, is what happens whenever claims are filed *after* a change in the law takes effect prospectively.

similarly situated individuals. But if she is denied under the new criteria but would have qualified under the old, she will suffer that unfairness. And from a public policy standpoint, error by the ALJ will go uncorrected.

The United States argues that the application of the new regulation in lieu of Listing 9.09 to cases pending on appeal is not properly classified as retroactive. *See* Def.'s Supp. at 2–5. When the agency deleted Listing 9.09 and substituted the new criteria in October 1999, it failed to clarify the effect of the deletion on cases pending on appeal. While it explained that the revisions would have "prospective effect," the agency described prospective effect simply as not requiring individuals already found disabled under Listing 9.09 to be reevaluated under the revised criteria. *See Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria,* 64 Fed.Reg. at 124.

Seven months later, on May 15, 2000, the SSA issued Social Security Ruling 00–3p, stating:

> The final rules deleting 9.09 apply to claims that were filed before October 25, 1999, and that were awaiting an initial determination *or that were pending appeal at any level of the administrative review process or that had been appealed to court.*

*Id.* (emphasis added). As noted above, some courts from other circuits have deferred to the agency's interpretation as expressed in this Ruling. *See Fulbright,* 114 F.Supp.2d at 475–76; *Castrejon,* 131 F.Supp.2d at 1056–57; *Havens,* 2001 WL 721661; *Rodriguez,* 2001 WL 406226. In the absence of any Ninth Circuit authority, this Court declines to do so.

■ Simply deferring to the agency's interpretation begs the question of whether following that interpretation would result in impermissible retroactive rule-mak-

ing without Congressional authorization. A court may not defer to an agency's interpretation of its own regulations where the interpretation is erroneous or inconsistent with a statute. *See United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 121 S.Ct. 1433, 1445, 149 L.Ed.2d 401 (2001). Yet social security ruling 00–3p would be erroneous and unauthorized if it compelled retroactive application of the new regulations.

■ Furthermore, Social Security Rulings, while instructive, are not conclusive and do not have the force of law. *See Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001) (holding that although Social Security Rulings that are issued by the Commissioner of Social Security to clarify implementing regulations and agency policies do not have the force of law, reviewing courts will give them some deference because they represent the Commissioner's interpretations of the agency's regulations, unless they are inconsistent with statutes or regulations.) (citing 20 C.F.R. § 402.35(b)(1)); *see also Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989) (citing *Paxton v. Secretary of Health & Human Servs.,* 856 F.2d 1352, 1356 (9th Cir.1988)). Under the second step of the *Landgraf* analysis, the Court concludes that applying the revised regulation to pending cases like Plaintiff's would be retroactive.

The third step of the *Landgraf* analysis requires this Court to consider whether *Congress* overrode the normal presumption of prospectivity by clearly expressing its intent to do so, and finds that it did not. As the United States recognizes, "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen,* 488 U.S. at 208, 109 S.Ct. 468. In particular,

> a statutory grant of legislative rulemaking authority will not, as a general mat-

ter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.... Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant. *Id.* at 208, 109 S.Ct. 468

The Supreme Court in *Bowen* concluded that the SSA did not have any statutory grant of authority to engage in retroactive rule-making, citing, among other provisions, the Social Security Act. *See* Def.'s Supp. at 2; *Bowen,* 488 U.S. at 213–14, 109 S.Ct. 468. Furthermore, Defendant concedes here that it was not aware of any expansion of Congressional intent before or after that case to grant such authority, nor is the Court.[9] *Id.* While the delegation of rule-making authority to implement the Social Security Act is broad, the lack of an express grant of authority to engage in retroactive rulemaking precludes the agency from doing so, at least absent a substantial justification not presented here.

Accordingly, the Court concludes that the agency's interpretation of its deletion of Listing 9.09 as applying to cases like Plaintiff's that were pending on administrative or judicial appeal is erroneous because it would result in impermissible retrospectivity without Congressional authority and would be unfairly retroactive. Therefore, Plaintiff's case shall be remanded to the ALJ for further proceedings pursuant to Listing 9.09.

**2. Plaintiff's obesity as a factor affecting all relevant steps of the sequential evaluation process.**

Alternatively, Plaintiff contends that even if the new regulation applies to claims

pending before the Appeals Council, the ALJ erred by failing to consider the effects of claimant's obesity at each step of the sequential evaluation process as the new regulation requires. While the Court need not reach this ground in view of its determination that Listing 9.09 applies to Plaintiff's claim, the Court concludes in the alternative that the agency erred even under its own interpretation that the revised obesity regulation that replaced Listing 9.09 applies to Plaintiff. The agency never considered the exacerbating effect of her obesity on her other impairments under the revised criteria before rejecting her disability claim.

**C. The ALJ's Credibility Determination Regarding Plaintiff's Excess Pain Testimony**

 Plaintiff argues that substantial evidence does not support the ALJ's findings regarding her subjective statements of pain. An individual's statements regarding pain or other symptoms are not in themselves conclusive evidence of a disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. 404.1529. A claimant must produce "medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain." *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir.1991). Pain cannot be objectively measured, however, because "excess pain is by definition pain at a level above that supported by medical findings." *Fair v. Bowen,* 885 F.2d 597, 601 (9th Cir.1989). Accordingly, "the ALJ's assessment of the claimant's credibility becomes exceptionally important." *Id.* at 602.

 The ALJ may not discredit the claimant's subjective complaints solely be-

---

**9.** Even if Congress had delegated that authority to the agency, the agency's clear intent to override the normal presumption of prospectivity is not binding on courts but at most

entitled to deference. By contrast, congressional intent is binding on courts unless it runs afoul of the Constitution.

cause the objective evidence fails to fully corroborate the degree of pain alleged. *See Reddick,* 157 F.3d at 722; *Bunnell,* 947 F.2d at 343, 345. To discredit the claimant's pain testimony, the ALJ "must make specific findings supported by the record." *Bunnell,* 947 F.2d at 346. There must be "clear and convincing" reasons for discrediting the claimant's testimony, and the ALJ must identify the testimony that "is not credible and [the] evidence that undermines the claimant's complaints." *Reddick,* 157 F.3d at 722 (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995)). By itself, the fact that a claimant does not exhibit manifestations of pain at the hearing before the ALJ is insufficient to rebut a claim of pain. *See Fair,* 885 F.2d at 602; *see also Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir.1985). The ALJ may, however, disregard self-serving statements that are not supported by objective findings. *See Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir.1985). The ALJ may also consider whether the claimant engages in daily activities that could be transferred to the workplace, as well as "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment ." *Bunnell,* 947 F.2d at 346 (quoting *Fair,* 885 F.2d at 603).

■ At the administrative hearing Plaintiff testified that when she walks for twenty minutes, her back "gets hot and then it shoots a shooting pain into my legs and they go numb. And then I'm like down on my back for like two days until the swelling goes down." (Rec.30). Plaintiff also stated that she can sit up straight for about two hours at a time but then has to get up and walk around or put her feet up for awhile. (Rec.32). After sitting for about two hours, Plaintiff described the pain as occurring in the middle of her back and as lasting for "five minutes or so." (Recs.32–33).

The ALJ articulated four reasons for discrediting Plaintiff's excess pain testimony. First, the ALJ did not find that Plaintiff's testimony provided a convincing description of the nature, location, onset, duration, frequency, radiation or intensity of the pain. (Rec.15). The ALJ noted, "[w]hen asked about precipitating factors, she was unable to provide any details about activities that might bring about her discomfort." *Id.* Second, the ALJ did not find Plaintiff's medical treatment sufficient. For example, Plaintiff pursued only limited and conservative medical treatment, and Plaintiff testified that she took no medication because of the side effects. *Id.* Third, although Plaintiff claimed family members performed most daily activities, Plaintiff was able to care for her personal needs, go to church, do some shopping and drive to pick her children up from school. *Id.* Finally, the ALJ noted that after filing for disability benefits, Plaintiff did become employed as a legal service courier but left that job not due to any physical limitations, but because her employer would not permit her to wear tennis shoes. *Id.*

These four factors in combination are substantial evidence in support of the ALJ's credibility determination. The ALJ did not discredit Plaintiff's pain testimony on the basis of insufficient objective evidence or base his credibility determination solely upon Plaintiff's failure to exhibit pain at the administrative hearing. Instead, the ALJ made specific findings and identified the testimony he found not credible as well as the testimony that undermined Plaintiff's subjective complaints. Therefore, substantial evidence exists in the record in support of the ALJ's credibility determination.

**D. INABILITY TO PERFORM PAST WORK**

Defendant argues that because Plaintiff failed to prove an inability to perform her

past relevant work as a payroll clerk, she is not disabled within the meaning of the Social Security Act. Past relevant work only becomes relevant, however, at step four of the five-step sequential evaluation process.

Here, pursuant to Listing 9.09, Plaintiff's obesity should have been considered in reaching a decision as to either step two or step three of the five-step sequential process. Only if she did not have a listed impairment or its equivalent at step three taking her obesity into account, would it be necessary to proceed to step four and consider her ability to perform past relevant work.

### E. *EXTRA–RECORD EVIDENCE*

██ Defendant argues that this Court should not consider Plaintiff's submission of extra-record evidence because it is immaterial. This allegedly extra-record evidence consists of a February 13, 1998 letter written by Dr. Cummins and an August 13, 1999 letter written by Dr. Peters. Extra-record evidence may provide a basis for remand, but not for summary judgment. To secure a remand for the consideration of new evidence, Plaintiff must show that the evidence is material and that good cause existed for the failure to produce the evidence in the prior proceeding. 42 U.S.C. § 405(g); *see Booz v. Secretary of Health & Human Serv.*, 734 F.2d 1378, 1380 (9th Cir.1984). New evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome of the Commissioner's determination. *Id.*

██ Here, the letter from Dr. Cummins is not extra-record evidence since it already appears in the record twice. *See* Recs. 160, 172. Dr. Peters' letter is new evidence. Defendant contends that the letter contradicts Dr. Peters' medical notes contained in the record and, thus, would have been disregarded by the ALJ as un-

reliable. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.1995). Dr. Peters' medical note only stated that during one of Plaintiff's visits she moved about "quite well" (Rec.115), which is not necessarily inconsistent with his subsequent letter that, given her various disabling problems in combination, Plaintiff is "not capable of any type of employment." *See* Letter attached to Pl.'s Mot. In any event, this Court has not considered Dr. Peters' letter in its decision to remand for error that occurred at step three. On remand, however, the agency should consider Dr. Peters' letter.

### V. CONCLUSION

Based on the foregoing reasons, this case shall be REMANDED for further proceedings pursuant to Listing 9.09 as the regulations existed at the time of the ALJ hearing.

IT IS SO ORDERED.