**Margaret GAY, Laura Kuykendall, Ruby Williams, et al., Plaintiffs–Appellees,**

v.

**Louis W. SULLIVAN, M.D., Secretary of United States Department of Health and Human Services, Defendant–Appellant.**

Nos. 90–3857, 90–3858.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1992.

Decided June 30, 1992.

John M. Bouman, Cheryl Graves, Legal Assistance Foundation of Chicago, Chicago, Ill., Linda L. Zazove, Land of Lincoln Legal Assistance Foundation, East St. Louis, Ill., Andrew Cohen (argued), Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellees.

Michael C. Messer (argued), Gary A. Sultz, Department of Health and Human Services, Region V, Office of the General Counsel, Nancy K. Needles, Asst. U.S. Atty., Office of the U.S. Atty., Civ. Div.,

---

Appellate Section, Chicago, Ill., for defendant-appellant.

Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Supplemental Security Income (SSI) benefits, which are payable to needy aged, blind, and disabled individuals, depend on beneficiaries' other income. The more the beneficiary receives from other sources, the less SSI benefits he or she is allotted. 42 U.S.C. § 1382(b). This case arises from a glitch in the operation of two congressionally mandated policies regarding the Secretary of Health and Human Services' calculation of SSI beneficiaries' income.

The first policy is complementarity of welfare benefits: families that receive Aid to Families with Dependent Children (AFDC)[1] should not have their AFDC benefits reduced by virtue of the fact that one family member receives SSI. To achieve this policy, Congress has declared that as soon as a member of an AFDC family begins to receive SSI benefits, he or she is no longer regarded as a member of the family, and his or her income is not included in the family income. 42 U.S.C. § 602(a)(24).[2] Thus, section 602(a)(24) creates a sort of fiction whereby an individual cannot simultaneously receive both AFDC and SSI benefits; this fiction allows the individual's family to receive its full entitlement to both types of benefits. The second policy is accuracy in income estimations: Congress has mandated that the Secretary of Health and Human Services base SSI beneficiaries' income calculations on past income, rather than on less accurate projections of future income. Under this "retrospective monthly accounting" system (RMA), the secretary must compute a beneficiary's income based upon the recipient's income in a prior month. 42 U.S.C. § 1382(c)(1). Pursuant to this legislation, the Secretary elected to determine benefit amounts based upon beneficiaries' income two months before the months in which the benefits were to be received. 20 C.F.R. § 416.420(a).

Complementarity plus accuracy sometimes produces a perverse inaccuracy. Consider individuals who make the transition from AFDC eligibility to SSI eligibility. As soon as AFDC beneficiaries become eligible to receive SSI benefits, they are no longer eligible for AFDC. 42 U.S.C. § 602(a)(24). But because of the Secretary's two-month retrospective accounting system, these individuals will have AFDC payments included in their estimated incomes for the first two months of SSI eligibility even though they cannot receive both AFDC and SSI simultaneously. The intersection of the two policies causes the secretary automatically to overestimate SSI beneficiaries' income for two months, and thereby to underpay their benefits for two months.

Congress eventually eliminated this glitch by enacting the Omnibus Budget Reconciliation Act of 1987 (OBRA 1987) § 9106, *codified at* 42 U.S.C. § 1382(c)(5), which provides that AFDC payments received by an SSI beneficiary shall be counted toward income *only in the month received*.[3] Congress provided that this section, enacted in 1987, would "become effective April 1, 1988." § 9106(b).

---

**1.** AFDC benefits are payable to eligible needy families with dependent children. 42 U.S.C. § 601 *et seq*.

**2.** Section 602(a)(24) states:
[I]f an individual is receiving benefits under subchapter·XVI [SSI] ..., then, for the period for which such benefits are received ..., such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this [AFDC] subchapter and his income and resources shall not be counted as income and resources of a family under this subchapter.

**3.** Section 9106 reads, in relevant part:
[A]ny income which is paid to or on behalf of an individual in any month pursuant to ... a State plan ... (relating to aid to families with dependent children) ... shall be taken into account in determining the amount of the benefit under this title of such individual (and his eligible spouse, if any) only for that month, and shall not be taken into account in determining the amount of the benefit for any other month.

But a class of people who made the transition from AFDC to SSI benefits *before* Congress eliminated the glitch brought suit against the Secretary for back SSI benefits. The class claims that the Secretary's method of computing their income violated their rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, the Social Security Act, 42 U.S.C. § 301 *et seq.*, and the Administrative Procedure Act, 15 U.S.C. § 551 *et seq.* The district court certified the plaintiff class,[4] and then granted it summary judgment on the ground that OBRA 1987, which was passed after the plaintiffs' benefits were paid but while the suit was pending in the district court, applied retroactively to benefits paid before its enactment. Thus, the plaintiffs prevailed below because the district court believed that Congress intended not only to eliminate the glitch for the future but to remedy its past effects. The district court did not reach the plaintiffs' other claims. Because we believe that Congress intended OBRA 1987 to apply prospectively only, we reverse the grant of summary judgment, vacate the entire district court order, and remand to the district court for consideration of the plaintiffs' other claims.

### Analysis

We have recently discussed the confusion surrounding the law of retroactivity in great detail. *See Mozee v. American Commercial Marine Service Company,* 963 F.2d 929 (7th Cir.1992). In brief, the Supreme Court's retroactivity jurisprudence appears self-contradictory on the question whether, absent congressional directive, statutes apply prospectively or retroactively. *Compare Bradley v. School Board,* 416 U.S. 696, 715, 94 S.Ct. 2006,

2018, 40 L.Ed.2d 476 (1974) ("even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect") *with Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments ... will not be construed to have retroactive effect unless their language requires this result."). Seventh Circuit law reflects this confusion. *Compare Littlefield v. McGuffey,* 954 F.2d 1337, 1345 (7th Cir.1992) (statute is retroactive unless its application would result in manifest injustice or there is legislative intent to the contrary) *with United States v. Kairys,* 782 F.2d 1374, 1381 (7th Cir.1986) ("Legislative enactments are presumed prospective absent clear statements by Congress to the contrary."). Although the Supreme Court has declined so far to resolve these tensions, *see Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), the Court's recent trend has certainly been toward prospectivity. *See Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 1561, 84 L.Ed.2d 572 (1985) (absent clear indication of retroactivity in statutes or legislative history, substantive standards governing grant amendments do not apply retroactively to previously made grants); *Georgetown University Hospital,* 109 S.Ct. at 475 (agencies do not have power to promulgate retroactive rules without express statutory delegation); *Kaiser Aluminum,* 110 S.Ct. at 1577–78 (when amendment of postjudgment interest statute specified effective date and tied interest calculation to date of entry of judgment, amendment did not apply retroactively to judgment entered before effective date). We do not need to predict the path of the

---

**4.** The district court certified the class as:

All persons who:

    (i) are or were residents of Illinois, Indiana, or Wisconsin;

    (ii) are or were eligible for SSI benefits under Title XVI of the Social Security Act;

    (iii) received AFDC under Title IV–A of the Social Security Act during the two months preceding the month they began to receive regular monthly SSI payments; and

    (iv) had their regular monthly SSI payments reduced from the amount that otherwise would be paid because AFDC benefits previously paid to them (or on their behalf) were counted as available income for SSI budgeting purposes in a decision by the Secretary at any administrative level dated on or after November 17, 1986. R. 96, Final Judgment Order at 2.

Court's jurisprudence, however. Both lines of precedent agree that if congressional intent is clear, then it is controlling. *Kaiser Aluminum*, 110 S.Ct. at 1578; *Mozee*, 963 F.2d at 932. Moreover, we have already held in *Mozee* that prospectivity is "the general rule," and that retroactivity applies in only "a narrow category of cases" where the statute does not affect "substantive rights and obligations." *Id.* at 936–937. Even remedial statutes that do not affect substantive rights will not always apply retroactively, however, *id.* at 938–939 (holding that remedial provisions will not be applied retroactively on appeal where such application would force parties to relitigate issues already decided below), and the precise contours of this "narrow category" remain undefined. We do not need to decide whether OBRA 1987 § 9106 constitutes the type of remedial provision that ought to apply retroactively absent express congressional direction, because we believe that Congress intended the law to apply prospectively only.

The district court attempted to divine Congress' intent but asked the wrong question. The district court applied a version of the above-stated rule distinguishing between substantive and remedial statutes;[5] it held that statutes "which are remedial in nature ... shall be applied to all claims pending at the time of the statute's enactment." Mem.Op. at 12, 1990 WESTLAW 70379 at *5. The district court then looked at the language of the statute and at the legislative history to determine whether Congress understood the law as remedial or substantive. The court ultimately decided that OBRA 1987 should be applied retroactively because Congress intended the statute to be a "technical improvement" in the method of calculating SSI payments for beneficiaries who are also AFDC recipients, and a technical improvement is remedial. Mem.Op. at 11, 1990 WESTLAW 70379 at *5. The court further held that retroactive application would not result in "mani-

fest injustice" to the Secretary. Mem.Op. at 12–15, 1990 WESTLAW 70379 at *5–6.

■ The district court erred by misconstruing the issue of congressional intent. The first question is not whether Congress intended the law to be remedial or substantive. The court should have first decided whether Congress had a more specific intention regarding whether the law should apply retroactively. Only if congressional intent on that point is unclear does the remedial/substantive distinction come into play. *See Kaiser Aluminum*, 110 S.Ct. at 1577 ("where the congressional intent is clear, it governs"); *Mozee*, 963 F.2d at 934–936 (when congressional intent was unclear, court applied rule that "statutory provisions impacting substantive rights and obligations will not be ·retroactively· applied").

■ Based on the language of the statute and the legislative history, we believe that Congress intended OBRA § 9106 to apply prospectively. Three major factors are persuasive. First, the express language of the section provides that "any income which *is paid* to or on behalf of an individual ... shall be taken into account ... only for that month...." 42 U.S.C. § 1382(c)(5) (emphasis added). The verb tense indicates that Congress intended the section to apply only to computations of future benefits; the statute does not say, "any income which has been paid." *See Bennett v. New Jersey*, 105 S.Ct. at 1561 (holding amendments prospective when House Report stated that amendments were intended to clarify "the manner in which school districts *are to distribute* Title I funds" (quoting H.R.Rep. No. 95–1137, at 21, 1978 U.S.Code Cong. and Ad. News at 4971 4991; emphasis added in *Bennett*). Thus, the express language of the statute indicates that Congress intended the provision to be prospective. *See also Kaiser Aluminum*, 110 S.Ct. at 1577–78 (when words of post-judgment interest statute indicated that Congress inextricably tied calculation of interest to date of

---

**5.** In the past, we have used the terms "remedial" and "procedural" interchangeably. *See, e.g.,*

*Kairys,* 782 F.2d at 1381.

entry of judgment, statute was prospective only).

Second, Congress provided that "[t]he amendments made [in section 9106] shall become effective April 1, 1988," OBRA 1987 § 9106(b), a date which followed the date OBRA § 9106 was enacted. The future effective date applied specifically to the provision at issue in this case. Thus, Congress explicitly provided that the provision would not apply until some time in the future. The plaintiffs argue that the future effective date should not constitute conclusive evidence of congressional intent. We do not hold that the future effective date is conclusive, however, but only that it is relevant. In *Kaiser Aluminum*, the Supreme Court decided that a statute governing the calculation of post-judgment interest did not apply retroactively. In coming to this conclusion, the court placed considerable weight on the fact that "Congress delayed the effective date on the amended version [of the statute] by six months to permit courts and attorneys to prepare for the change in the law." 110 S.Ct. at 1578. *See also Bennett v. New Jersey*, 105 S.Ct. at 1561 (in holding that Congress did not intend amendments to be retroactive, Court attached some weight to future effective date).[6] The plaintiffs point to some cases in which courts have considered legislation retroactive despite a future effective date. *See, e.g., Bradley v. School Board*, 416 U.S. at 709, 94 S.Ct. at 2015; *Littlefield v. McGuffey*, 954 F.2d 1337, 1345 (7th Cir.1992). To the extent that courts in these cases have explained their reasoning, they have stated that Congress mandated the future effective date

merely to give administrative agencies some lag time to adjust to the new law. Thus, a future effective date applies to agencies, but does not necessarily apply to courts considering pending cases. *See, e.g., Alexander v. Robinson*, 756 F.2d 1153, 1155 (5th Cir.1985). Had Congress wished to prohibit retroactive *judicial* application, some of these courts continued, it could have done so expressly, by mandating that the provision not apply to cases filed after a particular date or to underlying conduct occurring before a certain date. *See, e.g., In re Busick*, 831 F.2d 745, 748 (7th Cir. 1987). We believe that *Kaiser Aluminum* has limited this distinction between agency-retroactivity and judiciary-retroactivity. Although the dissent in *Kaiser Aluminum* argued that Congress should have expressly prohibited the statute from affecting pending cases if that is what it intended, 110 S.Ct. at 1590–1591, the majority rejected this distinction.[7]

It makes sense for the provision for a future effective date to constitute strong evidence of a congressional rejection of retroactivity, because presuming that a future effective date applies only to agencies causes absurd results in at least two different ways. Consider two parties in a simplified and accelerated world. Party 1 does not receive certain welfare benefits from an administrative agency in January. In February, Party 1 brings an action in court to recover those benefits. In March, Congress passes a new law providing that beneficiaries such as Party 1 are entitled to these benefits. Congress also provides that the new law should not become effec-

---

**6.** The dissenters in *Kaiser Aluminum* would not have attached much weight to the future effective date in the circumstances of that case because the future effective date was part of a complex statute effecting many different changes having nothing to do with prejudgment interest, the issue in that case. *Id.* Thus, they believed that there was little reason to infer that the future effective date applied specifically to the postjudgment interest issue before them. This consideration is not present in the case at hand. Congress passed the future effective date as subsection (b) specifically to apply to the subsection (a) with which the parties are concerned. *See* P.L. 100–203, § 9106, *reported in* 101 Stat. 1330–302.

**7.** The majority in *Kaiser Aluminum* noted that according to the legislative history of the relevant statute, the future effective date was for the benefit of courts and of the bar. 110 S.Ct. at 1578. Thus, the distinction between agency-retroactivity and judiciary-retroactivity was particularly inappropriate to that case. Although we have discovered no such indication in the legislative history of OBRA 1987 § 9106, we believe that it makes more sense to assume that the future effective date applies to everyone, absent any express indication to the contrary. *See infra* at 1128–29.

tive until June. But in April the court hearing Party 1's claim decides that the future effective date applies only to agencies, and that the law should apply retroactively, so that Party 1 reaps the benefit of a law enacted subsequent to the date the benefits were payable. In May, the administrative agency considers the benefit application of Party 2. Because Congress has mandated that the law is not effective until June, the administrative agency does not apply the law, and Party 2 does not receive the same benefits that Party 1 has just recovered in his lawsuit. The result is that the new law does apply to conduct that occurred before the law's enactment which is litigated in court, but does not apply to conduct that occurs after the law's enactment but before the future effective date if that conduct is evaluated by an agency. The situation becomes even more perverse if Party 2 challenges the agency's decision in court. Because courts have already decided that the law applies retroactively, Party 2 will prevail in court and recover the benefits denied to him by the agency. Therefore, a further absurdity is that the agency is whipsawed: every decision made by the agency regarding the time period between enactment and the future effective date will be held erroneous. We decline to interpret congressional action in such an absurd fashion absent congressional direction to the contrary. After *Kaiser Aluminum*, the future effective date applies to agencies and courts alike unless Congress says otherwise.

The Secretary points to other persuasive evidence of congressional intent in this case: the Congressional Budget Office cost estimates prepared at Congress' request and approved by the House Ways and Means committee. These cost estimates projected that Section 9106 would cost the government approximately $1 million for the fiscal years 1988–1990. CBO, 100th

Cong., 1st Sess., Cost Estimate for Title IX of the Reconciliation Provisions submitted by the Committee on Ways and Means, *reprinted in* 1987 U.S.Code Cong. & Ad. News 2313-1, 2313-1227, 2313-1232.[8] That amounts to approximately $330,000 per year. But if we were to apply the statute retroactively to the almost 800 plaintiffs in Illinois alone, the federal government could be forced to pay out almost that amount just to cover the expenses of beneficiaries in one state.[9] This enormous discrepancy also indicates that Congress never envisioned applying the law retroactively.

Perhaps none of these factors, taken alone, amounts to a clear congressional statement favoring prospectivity. *Cf. Littlefield v. McGuffey*, 954 F.2d at 1345 (future effective date alone does not "constitute[ ] a statutory direction sufficient to overcome application of the principle enunciated in *Bradley*). After all, neither reading Congress's mind nor interpreting statutes is easy. *See generally* Cass R. Sunstein, *Interpreting Statutes in the Regulatory State*, 103 Harv.L.Rev. 407 (1989). But where retroactivity is concerned, we believe that the Supreme Court has directed us to infer congressional intent from an accumulation of clues in the language and legislative history of statutes. *See Kaiser Aluminum*, 110 S.Ct. at 1578 (based on language of statute and future effective date, Congress intended statute to apply prospectively only); *Bennett*, 105 S.Ct. at 1561 (based on future effective date and future tense of language in legislative history, Congress did not intend statute to apply retroactively). Thus, we reverse and vacate the district court's order granting summary judgment for the plaintiff class.

The Secretary also argues that we must reverse the district court's decision to certify the plaintiff class because the unnamed plaintiffs never requested an administra-

---

**8.** The Committee on Ways and Means concurred in this estimate. H.R.Rep. No. 100–391(II), 100th Cong., 1st Sess., *reprinted in* 1987 U.S.Code Cong. & Ad. News 2313-1, 2313-1213, 2313-1216.

**9.** The average owed the named plaintiffs is $341 per year. $341 \times 800 = 272,800$ per year. This calculation is based on data supplied by the plaintiffs, and the plaintiffs do not challenge it except to argue that the budget office could not have accurately estimated this cost at the time the bill was enacted. The office's failure even to attempt to estimate this cost supports the defendant's argument, however.

tive reconsideration of their benefit amounts. Thus, the Secretary argues, the unnamed class members have not satisfied the "presentment" requirement embodied in the "final decision" requirement of 42 U.S.C. § 405(g), and jurisdiction is not proper under 42 U.S.C. § 1383(c)(3). Normally we would address this jurisdictional issue first. In the peculiar circumstances of this appeal, however, we need not decide this issue at all. It is undisputed that the district court, as well as this court, have jurisdiction over the named plaintiffs. Because we have jurisdiction over at least some of the plaintiffs, the parties rightly recognize that we must reach the merits no matter how we decide the jurisdictional issue. Moreover, the jurisdictional issue is immaterial to the result in this appeal. *See Foglesong v. Commissioner,* 691 F.2d 848, 849 n. 1 (7th Cir.1982) (when taxpayer and taxpayer's personal corporation appealed tax court decision in favor of Commissioner of Internal Revenue, and court reversed and remanded on the merits, court did not need to decide jurisdictional question regarding whether appellate court had jurisdiction over corporation's appeal). Thus, we will simply vacate the entire district court order.[10]

### *Conclusion*

For the reasons stated, we REVERSE and VACATE the district court's grant of summary judgment, VACATE its order certifying the class insofar as the retroactivity of OBRA 1987 § 9106 is concerned, and RE-MAND for further proceedings. The plaintiffs may pursue their remaining arguments, some of which they have argued on appeal, in the district court.

---

**10.** The heart of the Secretary's jurisdictional argument is that *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 2558–59, 61 L.Ed.2d 176 (1979), requires an additional submission when the plaintiffs contest the *amount* of benefits. Although the plaintiffs cite cases for the contrary proposition, those cases are from outside the circuit and include unpublished district court opinions. *See Linquist v. Bowen,* 813 F.2d

884 (8th Cir.1987), *Gould v. Bowen,* No. C2–87–0964 (S.D.Ohio, August 24, 1988); *Knight v. Bowen,* No. 80–892K (D.Mass., November 24, 1986). Moreover, none of these cases explains why *Yamasaki* is not controlling. We leave it to the district court to resolve, if necessary, the difficult question whether a class exists as to the remaining claims. That question is not now before us.