**Gwendolyn PORTLOCK, Plaintiff,**

v.

**Jo Anne B. BARNHART [1],
Commissioner of Social
Security, Defendant.**

**No. C.A. 99–931–RRM.**

United States District Court,
D. Delaware.

June 24, 2002.

Bayard Snyder, Wilmington, DE, Meyer Silver, Silver & Silver, Ardmore, PA, for plaintiff.

---

1. Jo Anne B. Barnhart became the Commissioner of Social Security on November 2, 2001, to succeed Acting Commissioner Larry G. Massanari. Massanari became Acting Commissioner on March 29, 2001, succeeding William A. Halter. Halter became Acting Commissioner on January 20, 2001, succeeding the original defendant in this case, Kenneth S. Apfel. Pursuant to Fed.R.Civ.P. 25(d)(2) and 42 U.S.C. § 405(g), Jo Anne B. Barnhart is automatically substituted as defendant in this action.

James A. Winn, Regional Chief Counsel, Margaret Maguire, Assistant Regional Counsel, Social Security Administration, Philadelphia, PA, Colm F. Connolly, United States Attorney, Ellen W. Slights, Assistant United States Attorney, Wilmington, DE, for defendant.

## MEMORANDUM OPINION

MCKELVIE, District Judge.

This is a social security case. Plaintiff Gwendolyn Portlock is a resident of Delaware whose claim for disability benefits has been denied by the Commissioner of Social Security. Defendant Jo Anne B. Barnhart is the Commissioner of Social Security for the Social Security Administration ("SSA").

Presently before the court is the Commissioner's motion to alter or amend the court's earlier order granting summary judgment to the Commissioner in part and remanding the case in part to the administrative law judge for the sole purpose of deciding whether listing 9.09, which lists "obesity" as an impairment, should apply to Portlock's claim. Listing 9.09 was deleted from the SSA "List of Impairments" after her claim was denied by the Commissioner and that decision was affirmed by an administrative law judge, but before Portlock filed her complaint in this court seeking review of those determinations.

The Commissioner argues that the deleted listing does not apply to Portlock's claim as a matter of law and requests that the court reconsider its earlier decision to remand. Instead, it contends that the court grant summary judgment to the Commissioner and affirm the Commissioner's decision in all regards. The court will grant the Commissioner's request that the court reconsider that portion of its earlier decision. This is the court's decision on that issue.

## I. PROCEDURAL BACKGROUND

A full review of the facts of this case is contained in the court's opinion of July 3, 2001. *See Portlock v. Apfel,* 150 F.Supp.2d 659 (D.Del.2001). The facts pertinent to this motion are as follows.

### A. Portlock's Application for Benefits

On September 15, 1995, Portlock filed an application for disability insurance benefits and supplemental security income, asserting that she became disabled on March 1, 1995 due to obesity, depression, anxiety, patellar bursitis, hypertension and asthma. On February 1, 1996, Larry Massanari, former Regional Commissioner for the SSA, denied Portlock's claim, stating that she did not suffer from a severe impairment that prohibited her from engaging in gainful employment. Massanari also denied Portlock's subsequent request for reconsideration.

Thereafter, on June 27, 1996, Portlock requested a hearing before an administrative law judge. After conducting a hearing on April 20, 1998, Administrative Law Judge William J. Reddy issued an opinion on June 18, 1998, in which he concluded that Portlock was not entitled to disability insurance benefits or supplemental security income. Portlock next requested that the appeals council review of Judge Reddy's decision.

### B. The Social Security's Administration's Deletion of Listing 9.09

In October of 1999, while Portlock's request for review of Judge Reddy's decision was pending, the Commissioner published a final rule in the Federal Register deleting listing 9.09, Obesity, from Appendix 1, Subpart P of 20 C.F.R. § 404, the "Listing of Impairments." *See Revised Medical Criteria for Determination of Disability, Endocrine and Related Criteria,* 64 Fed. Reg. 46122 (1999). The SSA had original-

ly recognized obesity as a valid disability for which social security income could be awarded, by including obesity in its "Listing of Impairments" as listing 9.09.[2] Former listing 9.09 read as follows:

> **9.09 Obesity.** Weight equal to or greater than the values specified in Table 1 for males, Table II for females (100 percent above desired level), and one of the following:
>
> A) History of pain and limitation of motion in any weight-bearing joint . . . associated with findings on medically acceptable imaging techniques or arthritis in the affected joint . . .; or
>
> B) Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg . . .; or
>
> C) History of congestive heart failure . . .; or
>
> D) Chronic venous insufficiently with superficial varicosities in a lower extremity with pain on weight-bearing and persistent edemal or
>
> E) Respiratory disease with total forced vital capacity equal to or less than the value specified in Table III–A or III–B or III–C.

In its October 1999 ruling, the SSA explained that it was removing listing 9.09, because the SSA determined "that the criteria in listing 9.09 were not appropriate indicators of listing-level severity because they did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." *Id.* The Revised Medical Criteria state that the deletion is to have "only a prospective effect," *id.* at 46126, without affecting individuals previously found disabled under the listing. *Id.* This final rule became effective on October 25, 1999. *Id.* at 46122.

Although obesity was no longer to be evaluated as an independent "impairment," under the new rules, obesity continued to be addressed in the other parts of the SSA listings. The SSA stated that it while it deleted obesity as an independent listing, obesity should still be considered in connection with certain other impairments of the musculoskeletal, respiratory, and cardiovascular body systems for purposes of evaluating disabilities claims. The SSA explained that it was "adding guidance about evaluating claims for benefits involving obesity to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings." *Id.* at 46127.

Thus, in the final rule, the SSA substituted Revised Medical Criteria in listing sections 1.00F (musculoskeletal system), 3.00I (respiratory system), and 4.00F (cardiovascular system) that "provide guidance about the potential effects obesity has in causing or contributing to the impairments in those body systems." *See* Titles II and XVI: Evaluation of Obesity, Policy Interpretation Ruling, SSR 00–3p, 2000 WL 628049 (May 15, 2000) [hereinafter SSR–00–3p]. These new paragraphs in 20 C.F.R. Subpart P. § 404, Appendix 1, §§ 1.00F, 3.00I, and 4.00F, state that obesity, a "complex, chronic disease characterized by excessive accumulation of body fat," *see* SSR 00–3p, is a medically deter-

---

2. Under the Social Security Act, a claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve (12) months." 42 U.S.C.A. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (1981). Under the medical-vocational regulations, as promulgated by the Commissioner, a five-step sequential evaluation is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520(b)–(f). As part of this analysis the impairment of which the claimant complaint must meet the durational requirement and be listed in the SSA's "Listing of Impairments," *see* 20 C.F.R. § 404 Appendix 1.

minable impairment that is often associated with disturbances of these body systems, and that disturbances of these body systems can be a major cause of disability in individuals with obesity.[3] *See* 64 Fed. Reg. at 46122, 46128–46129. The Revised Medical Criteria thus require that the effect of obesity on the claimant in combination with these impairments be considered when evaluating disability. *Id.* at 46124.

On May 15, 2000, in connection with its final rule revising the listings and deleting listing 9.09, the SSA issued a Social Security Ruling to provide further guidance on the evaluation of claims for benefits involving obesity following the rule change. *See* SSR 00–3p at *1. One section of this ruling, entitled "Effect of the Rules Change: Claims in Which Prior Listings Apply and Do Not Apply," *see id.* at *7, clarifies that it is the intent of the SSA that the final rule deleting listing 9.09 applies to claims, such as Portlock's, that were filed before October 25, 1999, the effective date of the rule, but that were "awaiting an initial determination or that were pending appeal at any level of the administrative review process or that had been appealed to court." *Id.* The ruling also states that the rule change affects the entire claim, including the period before October 25, 1999, noting in addition that this is the SSA's usual policy with respect to any change in its listings. *Id.* The ruling goes on the explain that for claims that have already been allowed, the deletion of listing 9.09 "does not affect the entitlement or eligibility of individuals receiving benefits because

their impairment(s) met or equaled that listing" and that when periodic continuing disability reviews are conducted "we will not find that an individual's disability has ended based on a change in a listing." *Id.*

### C. *Portlock's Complaint in this Court and the Court's Earlier Ruling*

On November 9, 1999, the appeals council denied Portlock's request for review of Judge Reddy's decision. Shortly thereafter, on December 29, 1999, Portlock filed a complaint in this court, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision to deny her claim for disability insurance benefits and supplemental security income. The parties subsequently cross-moved for summary judgment.

In its July 3, 2001 opinion, the court found that the Commissioner was entitled to summary judgment and affirmed his decision on all issues, except for the issue regarding obesity. With regard to the issue regarding obesity, some background is required.

In Judge Reddy's opinion, he discussed only section B (hypertension) of listing 9.09. Reddy concluded that Portlock did not meet 9.09B because "the required blood pressure readings [were] not ... persistently met, and results of pulmonary function tests [were] not ... reliable." Portlock contends that Judge Reddy should have also discussed why Portlock did not meet 9.09A and that therefore Judge Reddy committed reversible error.

---

**3.** Specifically, the paragraphs that were added read as follows: "Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal [or respiratory or cardiovascular] system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal [or respiratory or cardiovascular] impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment ... adjudicators must consider any additional or cumulative effects of obesity." *See* 20 C.F.R. Subpart P. § 404, Appendix 1, §§ 1.00F, 3.00I, and 4.00F, 64 Fed.Reg. at 46122, 46128–46129.

Before determining whether Judge Reddy should have discussed the applicability of 9.09A to Portlock, the court first had to determine "whether Listing 9.09 presently applies to Portlock at all." *Portlock*, 150 F.Supp.2d. at 670. On that matter, the court concluded that it required further guidance on the threshold question of whether now-deleted Listing 9.09. or the revised listings apply to Portlock's claim. *Id.* Therefore, the court granted in part defendant's motion for summary judgment, but remanded the case to the Administrative Law Judge "to determine which criteria applies and whether Portlock meets its requirements." *Id.* at 671.

### D. The Commissioner's Present Motion for Reconsideration

On July 18, 2001, defendant moved to alter or amend the court's July 3, 2001 order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, requesting that the court vacate the portion of its order that remanded the case for a determination of whether listing 9.09 should apply to Portlock and that the court enter an order affirming the final decision of the Commissioner that Portlock is not disabled and granting summary judgment in favor of the Commissioner.

This is the court's decision on the Commissioner's motion.

## II. DISCUSSION

The sole issue that is presently before this court is whether the deleted or revised listing 9.09 should apply to Portlock's claim.

### A. The Parties' Positions

Social Security Ruling 00–3p explains that the final rules deleting listing 9.09 apply to claims that were filed before October 25, 1999, but were pending appeal at any level of the administrative review process or that had been appealed to federal court. It further states that the change in law affects the entire claim, including the time period prior to October 25, 1999. Thus, SSR 00–3p is quite clear that even though Portlock's original claim was filed and reviewed by the Commissioner and administrative law judge under the old listings which included listing 9.09, because Portlock's claim was pending appeal to the appeals council as of October 25, 1999, that listing should no longer apply to Portlock's claim.

#### 1. The Commissioner's Position

The Commissioner contends that, as a matter of law, deleted listing 9.09 cannot be applied to Portlock's claim. *See Wooten v. Apfel*, 108 F.Supp.2d. 921, 924 (E.D.Tenn.2000) (concluding that ALJ's failure to consider listing 9.09 as basis for plaintiff's possible disability was not in error because "despite the fact that Listing 9.09 remained a valid listing at the time each of the ALJ's had the plaintiff's case before them … the Obesity listing has now been removed."); *Fulbright v. Apfel*, 114 F.Supp.2d. 465, 476 (W.D.N.C.2000) (concluding that the "removal of former Listing 9.09 and subsequent revision to the other listing sections is the law in effect for this case") (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 273–77, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (reaffirming general principle that a court is to apply the law in effect at the time of its decision) and SSR 00–3p, *Titles II and XVI: Evaluation of Obesity*, 65 Fed.Reg. 31, 039 (2000) ("The final rules deleting listing 9.09 apply to claims that were filed before October 25, 1999 … that were pending appeal at any level of the administrative review process or that had been appealed to court")). Accordingly, the Commissioner argues that the court was incorrect in remanding the obesity determination to the administrative law judge, because "the ALJ could not find that

Plaintiff meets listing 9.09 on any remand because that listing no longer exists."

### 2. *Portlock's Position*

In response, Portlock contends that the deleted listing 9.09 should apply to her claim because that was the listing under which her claim, which is the subject of this appeal, was considered. She argues that to apply the rule change retroactively[4] so as to adversely impact her claim, as the Commissioner seeks here, constitutes an unauthorized regulatory change because "there was no express grant for retroactivity to be applied." Specifically, Portlock contends that because the provisions in the Social Security Act granting the Commissioner the power and authority to make rules and regulations do not expressly authorize retroactive rule making, the Commissioner does not have the authority to promulgate rules that have a retroactive effect. In support of this proposition, she cites the Supreme Court's decision in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 215, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). There, the Supreme Court found that the Secretary of Health and Human Services could not retroactively reinstate a cost-limit rule that, if applied, would have allowed the Secretary to recoup overpaid sums from participating institutions of Medicare. In so finding, the Supreme Court stated that:

> Retroactivity is not favored in the law. Thus, Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. By the same principle, a statutory grant of legislative rule making authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.

Even where some substantial justification for retroactive rule making is present, courts should be reluctant to find such authority absent an express statutory grant.

*Id.* at 208, 109 S.Ct. 468. Other Circuits have followed the precedent set forth in *Bowen* by refusing to apply administrative rule changes retroactively unless (i) Congress expressly authorized the agency to engage in retroactive rulemaking, and (ii) the agency clearly intended the rule to be applied retroactively. *See, e.g. Gay v. Sullivan*, 966 F.2d 1124 (7th Cir.1992) (holding Omnibus Budget Reconciliation Act should be applied prospectively only); *Pope v. Shalala*, 998 F.2d 473 (7th Cir. 1993) (stating that "a rule changing the law is retroactively applied to events prior to its promulgation only if, at the very least, Congress expressly authorized retroactive rulemaking and the agency clearly intended that the rule have retroactive effect").

Portlock further contends that SSR 00–3p is merely a Social Security Agency guideline and is not "controlling law." *See Sykes v. Apfel*, 228 F.3d 259, 271 & n. 14 (3d Cir.2000) (citing *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 ("Rulings do not have the force and effect of the law or regulations ... A ruling may be superseded, modified, or revoked by later legislation, regulations, court decisions or rulings.")); *Daughters of Miriam Center for the Aged v. Mathews*, 590 F.2d 1250 (3d Cir.1978) ("[i]nterpretive rulemaking, those statements made by an agency to give guidance to its staff and affected parties as to how the agency intends to administer a statute or regulation 'is not controlling upon the courts' ...") (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *see*

---

**4.** Black's Law Dictionary 1318 (7th ed.1999) defines the term "retroactive" as that which extends a statute or ruling "in scope of effect to matters that have occurred in the past."

*also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001) (noting that Social Security Rulings that are issued by the Commissioner of Social Security do not have the force of law, reviewing courts will give some deference to those rulings unless they are inconsistent with statutes or regulations). Portlock contends that the interpretation of the ruling deleting rule 9.09 embodied in SSR 00–3p is erroneous and unauthorized because it compels the retroactive application of the new regulations. *See United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) (a court cannot defer to an agency's interpretation of its rulings where that interpretation is erroneous or inconsistent with a statute). Therefore, Portlock argues, the Commissioner's argument that the obesity listings should not apply to those claims already pending before the effective date of the deletion is without statutory authority and does not meet the Supreme Court's due process guideline's for retroactive application of rules.

Last, Portlock argues that the application of SSR 00–3p to her claim would be inequitable and would violate her due process rights. Listing 9.09 was in effect when Portlock filed her claim in 1995. It was in effect when her claim was subsequently denied by the Commissioner and when that determination was affirmed by the administrative law judge. Listing 9.09 was the applicable standard that her claim was to be measured against. Portlock now contends that those determinations were erroneous. If she is correct, she should have been receiving benefits since 1995. If that were the case, SSR 00–3p would have no affect on the benefits that she was receiving. However, because her case was incorrectly adjudicated prior to the deletion of the obesity listing, the ruling states that she should be denied benefits under that listing.

**B.** *Review of Relevant Cases Considering This Issue*

In its July 3, 2001 opinion the court reviewed a number of cases that had addressed the issue of whether the deletion of listing 9.09 should apply retroactively to claims filed prior to the deletion. It concluded, however, that due to "lack of agreement on this issue, this court requires further direction whether Listing 9.09 or the revised listings apply to Portlock's claim." *See Portlock,* 150 F.Supp.2d. at 671. As the Commissioner has sought reconsideration arguing that the issue is clear, the court will undertake a more exhaustive review of the case law on the issue.

Few courts have had the opportunity to consider the issue of which regulation to apply to claims pending in appeal when listing 9.09 was deleted and replaced. By the court's count, there are seven district court opinions, many of which are unpublished, and one unpublished (and hence non-precedential) appellate opinion that have addressed this issue. These cases have reached conflicting results. *See Nash v. Apfel,* 215 F.3d 1337, 2000 WL 710491 (10th Cir.2000)(Table) (unpublished disposition) (applying old listing 9.09 to plaintiff's claim); *Campbell v. Barnhardt,* 178 F.Supp.2d 123 (D.Conn.2001) (remanding to administrative law judge to make determination as to which rule to apply to plaintiff's claim); *Kokal v. Massanari,* 163 F.Supp.2d 1122 (N.D.Cal.2001) (applying old listing 9.09 to plaintiff's claim); *Glenn v. Massanari,* No. Civ. A. 00–4184, 2001 WL 1003075 (E.D.Pa. Aug. 27, 2001) (applying new rule to plaintiff's claim); *Havens v. Massanari,* No. 99–1008–MLB, 2001 WL 721661 (D.Kan. May 9, 2001) (applying new rule to plaintiff's claim); *Rudolph v. Apfel,* No. 00–4093–DES, 2000 WL 1916317 (D.Kan. Dec. 29, 2000) (applying old listing 9.09 to plaintiff's claim);

*Fulbright,* 114 F.Supp.2d. 465 (applying new rule to claim); *Wooten,* 108 F.Supp.2d. 921 (applying new rule to claim).

1.  *Cases Concluding That the Listing 9.09 Must be Applied to Claims on Appeal in the Administrative Process*

The cases concluding that listing 9.09 must be applied to benefit claims filed and adjudicated prior to October 25, 1999 that are on appeal in the administrative process reach this conclusion in light of the Supreme Court jurisprudence on the issue of retroactive rulemaking. When measured against the standards set forth by the Supreme Court, these cases conclude that the old listing must be applied because either the SSA has not indicated a clear intent to apply its ruling retroactively or, when it became clear after the SSA issued SSR 00–3p that the SSA did so intend, the Commissioner does not have the authority to engage in retroactive rulemaking. The court will review these cases, beginning with *Nash.*

The first court to address the problem of retroactively that arises in applying the new regulations to claims filed and adjudicated under the old listing 9.09 was the Tenth Circuit in its unpublished decision in *Nash,* 215 F.3d 1337. In that case, like here, the Commissioner contended that the court could not grant benefits to Nash under listing 9.09, no matter how it resolves her issues on appeal, because the listing has been deleted and replaced with more restrictive guidance "about the evaluation of claims for benefits involving obesity to the prefaces of [revised] musculoskeletal, respiratory, and cardiovascular body system listings." *Revised Medical Criteria for Determination of Disability,* 64 Fed.Reg. 46122, 46123 (1999). The briefing and argument in *Nash* were completed before the SSA issued SSR 00–3p, which clarified that it intended the revised list-

ings to be applied to claims on appeal in the administrative process. Nonetheless, the Commissioner took the position that because the Revised Medical Criteria stated that the deletion, which was to be effective October 25, 1999, is to have "only a prospective effect," *id.* at 46126, without affecting individuals previously found disabled under the listing, that pending claims, even claims˙ on judicial review, should be evaluated in accordance with the revised listings.

The Tenth Circuit disagreed with the Commissioner's position and his interpretation. Citing *Bowen,* 488 U.S. at 208, 109 S.Ct. 468, the Tenth Circuit stated that "[a] rule changing the law is retroactively applied only if Congress expressly authorized retroactive rulemaking and the agency clearly intended the rule to have retroactive effect." *Nash,* 2000 WL 710491 at *2, 215 F.3d 1337. The *Nash* Court found that the Commissioner had not satisfied this standard in that "he has not shown an intention to apply the 1999 listing retroactively to a claimant who was erroneously denied benefits under the earlier listing, even though a claimant who was granted benefits may continue to receive them." *Id.* The court reasoned that "[w]ithout a more specific statement of intent, [it could] . . . not conclude that the agency intended this perverse result." *Id.*

A district court in Kansas reached the same result in the *Rudolph* case, soon after the Tenth Circuit's decision in *Nash.* While noting that the *Nash* opinion was not binding precedent, the district court quoted the *Nash* court's statement that "[a] rule changing the law is retroactively applied only if Congress expressly authorized retroactive rulemaking and the agency clearly intended the rule to have retroactive effect." *Rudolph,* 2000 WL 1916317 at *7. The court in *Rudolph* found the reasoning of *Nash* persuasive and applied

the same reasoning to conclude in that case that "the Commissioner has failed to demonstrate that the agency had a specific intent to apply the 1999 deletion retroactively" and that the plaintiff's claim should be "evaluated under listing 9.09 as it existed at the time of the administrative hearing." *Id.*

Well after the SSA issued SSR 00–3p, the District Court for the Northern District of California had occasion to pass on this issue · in *Kokal v. Massanari*, 163 F.Supp.2d 1122. In a thoughtful and well-reasoned opinion, the district court concluded that despite the SSA's statements to the contrary, the SSA's revision of the obesity guideline could not be retroactively applied to the claimant's case. The court noted that such retroactive application would be unfair, *see Landgraf*, 511 U.S. at 272, 114 S.Ct. 1483, because "[o]ther similarly situated obese individuals who had their hearing while Listing 9.09 was still in effect and whose ALJ's applied the regulations property were granted disability benefits ... [, y]et Plaintiff, because of her ALJ's error, would be subject to the new, less favorable standard ... [i]f she is denied under the new criteria but would have qualified under the old, she will suffer that unfairness." *Kokal*, 163 F.Supp.2d at 1132–33. After reviewing the cases that have addressed the issue, the court conducted an analysis under *Landgraf* and *Bowen*, and concluded that "applying the revised regulation to pending cases like Plaintiff's would be retroactive" and that "the SSA [does] not have any statutory grant of authority to engage in retroactive rulemaking." *Id.* at 1133–34.[5]

### 2. Cases Concluding That the New Revised Listing Should Apply to Claims on Appeal in the Administrative Process

· In contrast to the above cases concluding that listing 9.09 must be applied to benefit claims filed and adjudicated prior to October 25, 1999 that are on appeal in the administrative process, cases reaching the opposite conclusion are marked by surprisingly little analysis of the problems associated with that conclusion. The court will review these cases, beginning with the first case to consider this question, *Wooten v. Apfel*, 108 F.Supp.2d. 921, 924 (E.D.Tenn.2000).

The plaintiff in *Wooten* contended that the ALJ and Commissioner erred in failing to consider whether he meets Listing 9.09A or 9.09D. *See Wooten*, 108 F.Supp.2d. at 923. The issue of whether the old listing 9.09 or the newly revised regulations should be applied came before the court on cross-motions for summary judgment. *Id.* In disposing of Wooten's claim, the district court cryptically stated that "[t]he new rules have prospective effect and, therefore, apply to cases pending at the time the rule took effect in October 1999. ... In light of the fact that the Obesity Listing has been removed ... plaintiff's specific argument [that the ALJ and Commissioner failed to consider Listing 9.09 as a basis for his disability] must be

---

5. The most recent court to have considered this issue was the District of Connecticut, in *Campbell v. Barnhart*, 178 F.Supp.2d 123. While the Campbell court indicated that it might agree with the court in *Kokal* that the position of the SSA, as embodied in SSR 00–3p, that the revised listings apply retroactively to cases pending appeal is "unacceptable," the court did not definitively rule on the issue, because it found that "a remand is necessary in any event." *Campbell*, 178 F.Supp.2d. at 133 (stating that the retroactivity issue may not be dispositive and that even if it is, "the court will benefit from the reasoned analysis of the SSA on the issue," which had not been addressed in the case). The court therefore does not include this case in its discussion of cases that have come down on one side or the other of this issue.

dismissed as without merit." *Id.* at 924. This determination is curious, because, while it labeled the effect of the rule as "prospective," the court went on to apply it to Wooten's claim in a retroactive manner.

The district court in *Fulbright,* 114 F.Supp.2d. 465, engaged in even less analysis than the *Wooten* court in finding that Fullbright's claim should be evaluated under the new rule. Without addressing the retroactivity issue, the court simply stated that the "removal of former Listing 9.09 and subsequent revision to the other listing sections is the law in effect for this case." *Fulbright,* 114 F.Supp.2d at 476. In support of this conclusion, the district court cited to SSR 00–3p and the Supreme Court's decision in *Landgraf,* 511 U.S. at 273–277, 114 S.Ct. 1483, which reaffirmed the general principle that a court is to apply the law in effect at the time of its decision.

In *Havens v. Massanari,* 2001 WL 721661, a District of .Kansas case that came after *Nash* and *Rudolph,* the court reached the opposite conclusion as those decisions in finding that the revised ruling should apply to the plaintiff's claims. The courts in *Nash* and *Rudolph* had concluded that the 9.09 listing must be applied to claims pending appeal, because at the time of their decision the SSA had not indicated its intent to apply its ruling retrospectively. In the interim, however, the SSA issued SSR 00–3p, which "clearly and unambiguously indicated that the deletion of section 9.09 should be applied to claims appealed to federal court even if the benefits have been erroneously denied under the old listing." After so noting, the Magistrate Judge in *Havens* thus decided that even though Havens' claim, which was evaluated under listing 9.09, was being reviewed by the federal court, her claim must now be evaluated in accordance with the new guidelines. *Havens,* 2001 WL 721661 at *1. Havens did not challenge this

conclusion, only objecting that "while this ruling may have been correct, it was for the wrong reasons." *Id.* at *2. Finding no allegation of error, the district court affirmed the Magistrate Judge's decision. *Id.* Thus, again a court simply adopted SSR 00–3p as the law for the case without considering whether the Commissioner was authorized to engage in such retroactive rulemaking.

In a similar ruling, the District Court for the Eastern District of Pennsylvania also found that the revised listings apply to a claim on appeal prior to October 1999. In *Glenn v. Massanari,* 2001 WL 1003075, the Magistrate Judge found that the new final rule should not apply in this case because "a claimant who was found disabled on the basis of obesity prior to the repeal of Listing 9.09 would be precluded from receiving benefits, whereas a claimant who was denied benefits as a result of a misapplication of Listing 9.09 would be precluded from receiving benefits, *even if* the misapplication pre-dated the repeal of Listing 9.09." *Glenn,* 2001 WL 1003075 at *2. The Magistrate found this result to be inequitable. In sustaining the Commissioner's objection to the Magistrate's decision, the district court disagreed and found that the Magistrate erred as a matter of law. The court first noted that "the language of the Commissioner's May 2000 ruling [SSR 00–3p] is clear that the revised rulings apply retroactively to cases which have been appealed to court." *Id.* Then, citing to the district court decisions in *Wooten, Fulbright,* and *Havens,* the court concluded that "[b]ecause 9.09 was deleted, the ALJ cannot have been in error for denying the claim on the basis that 9.09 was not met." *Id.* Again, even after acknowledging that the final rule was being applied "retroactively," the court accepted SSR 00–3p as the law of case, while failing to conduct the required analysis to determine if the Commissioner was autho-

rized to promulgate retroactive regulations.

## C. The Court's Analysis

■ In its prior opinion, the court indicated that it was troubled by the "lack of agreement" concerning whether the revised regulations are to be retroactively applied to Portlock's claim. Therefore, while it found that substantial evidence supported the Commissioner's decision on all determinations except the one concerning obesity, it decided to remand that issue to the administrative law judge to determine whether listing 9.09 for obesity should apply at all to Portlock's claim.

The Commissioner's motion for reconsideration has given the court occasion to further consider whether the revised listing deleting listing 9.09 should be retroactively applied to Portlock's claim. After considering the foregoing case law and the parties' briefs on the matter, the court concludes that the revised regulations cannot be so applied.

■ The starting point for the court's analysis is to determine whether applying the revised regulations in the manner urged by the SSA in SSR 00–3p would constitute a retroactive application of a rule. The term "retroactive" is defined as that which extends a statute or regulation "in scope or effect to matters that have occurred in the past." Black's Law Dictionary 1318 (7th ed.1999). A regulation thus is considered to have a retroactive effect if the regulation "impair[s] the rights the party had when he acted, increase[s] a party's liability for past conduct or impose[s] new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. Here the new provision attaches new legal consequences to events completed before its enactment. *Id.* at 270, 114 S.Ct. 1483. If the revised 20 C.F.R. § 404 were deemed applicable to pending claims, like Portlock's, the rights of Portlock and those similarly situated to her would be substantially altered, because "the revised regulation would raise the bar on proof of disability based on obesity." *Kokal,* 163 F.Supp.2d. at 1131. Thus, the application of the revised listings to Portlock's claim would constitute a retroactive application of the rule.[6]

As "retroactive legislation has always been looked upon with disfavor," *Bowen*, 488 U.S. at 224, 109 S.Ct. 468, Supreme Court jurisprudence requires that two criteria are satisfied in order to apply an administrative agency rule retroactively. First, the agency must express its clear intention that such rules be applied retroactively. *See id.* at 208, 109 S.Ct. 468 ("congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). Second, if it does, Congress must have given the agency authority to promulgate retroactive rules. *See id.* at 208, 224, 109 S.Ct. 468 (noting that "it is axiomatic that an administrative agency's power to promulgate legislative regulations in limited to the authority delegated

---

6. As the district court in *Kokal* noted, "when the [SSA] first deleted listing 9.09 and substituted the new criteria in October 1999, it failed to clarify the effect of the deletion on cases pending appeal. While it explained that the revisions would have 'prospective effect,' the agency described the prospective effect simply as not requiring individuals already found disabled under Listing 9.09 to be re-evaluated under the revised criteria ... Seven months later, on May 15, 2000, the SSA is sued [SSR 00–3p], stating: 'The final rules deleting 9.09 apply to claims that were filed before October 25, 1999, and that were awaiting an initial determination *or that were pending appeal at any level of the administrative review process or that had been appealed to court.'* " This court, like the court in Kokal, declines to apply the prospective label of the SSA to an application of a rule that is clearly retroactive in effect to claimants such as the plaintiff in this case.

by Congress" and that therefore "a statutory grant of legislative rulemaking authority will not ... be understood to encompass to promulgate retroactive rules unless that power is conveyed by Congress in express terms"); *see also Nash*, 2000 WL 710491 at *2, 215 F.3d 1337 ("[a] rule changing the law is retroactively applied only if Congress expressly authorized retroactive rulemaking and the agency clearly intended the rule to have retroactive effect.").

The court declines to follow those courts that have adopted SSR 00–3p as the law in the case without first considering whether the SSA had the authority to promulgate retroactive rules. While SSR 00–3p clarifies that it is the SSA's intent to apply the newly revised regulations retroactively to Portlock's claim, the critical inquiry that remains is does the SSA have the power to promulgate such regulations? *See Bowen*, 488 U.S. at 213, 109 S.Ct. 468 ("deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate").

■ According to *Bowen*, the threshold question in determining the validity of the rule at issue is whether the Social Security Act authorizes retroactive rulemaking. *See Bowen*, 488 U.S. at 224, 109 S.Ct. 468 ("an agency cannot act with retroactive effect without some special congressional authorization."). Therefore, the validity of the SSA's intention to apply its new rules in accordance with SSR 00–3p depends on whether the Commissioner was authorized to issue a rule that applies retroactively to claims filed before the rule's effective date.

Section 405(a) of the Social Security Act provides that Congress has authorized the Commissioner of Social Security to issue rules and regulations that are "reasonable and proper" to the establishment of a claimant's right to disability under the Act.[7] This grant of authority, while broad, does not give the SSA the express power to engage in retroactive rule-making. *See Kokal*, 163 F.Supp.2d. at 1134. Therefore, the court finds that despite the SSA's desires to the contrary, the revised rules deleting listing 9.09 cannot be applied to Portlock's claim.

This conclusion is not only supported by the framework set forth by the Supreme Court, in *Bowen*, but by the Court's specific conclusion in that case. There, the Court reviewed a number of the statutory provisions concerning the SSA, citing in particular (among other provisions) to the provision of the Social Security Act that grants authority to the Commissioner to promulgate rules, 42 U.S.C. § 405(a). *See Bowen*, 488 U.S. at 214 n. 3, 109 S.Ct. 468. The Court concluded that these "statutory provisions establishing ... general rule-making power contain no express authorization of retroactive rulemaking," *id.* at 213, 109 S.Ct. 468, and that therefore the agency could not promulgate rules that had a retroactive effect. This court reaches the same conclusion here. *See Kokal*, [cite] (stating that the court is "not aware of any expansion of Congressional intent before or after that case [Bowen] to grant ... [the] authority ..." to engage in retroactive rulemaking). Therefore, listing 9.09 must be applied to claims pending appeal

---

7. That provision states in full:

The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.
42  U.S.C. § 405(a)

in the administrative process when it was repealed.

In its July 3, 2001 memorandum opinion, the court concluded that it would be prudent to remand this case to the administrative law judge to make two findings. First, as between the revised listings deleting listing 9.09 and the old listings including 9.09, which criteria should be applied to Portlock's claim? Second, upon application of the correct criteria, does Portlock meet its requirements? After reconsideration, the court has resolved the first of these issues in Portlock's favor, and concludes that listing 9.09 must be applied to Portlock's claim. It is still necessary to remand this case, but now the administrative law judge must only resolve the issue of whether Portlock meets the requirements of listing 9.09, and in particular whether she meets the requirements of listing 9.09A.

## III. *CONCLUSION*

The court has considered the Commissioner's motion for reconsideration and Portlock's arguments in reply. In conclusion, the court finds that Portlock's claim should be evaluated under now-deleted listing 9.09. A remand is still necessary to determine whether Portlock meets the requirements of that listing. The court will enter an order consistent with this memorandum opinion.